08-1454-ag
Brodsky v. U.S. Nuclear Regulatory Commission

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2008

(Argued: May 11, 2009          Decided: August 27, 2009)

Docket No. 08-1454-ag

-------------------------------------------------------x

RICHARD L. BRODSKY, New York State Assemblyman, from the 92nd Assembly District in his official and individual capacities, WESTCHESTER CITIZEN'S AWARENESS NETWORK (WESTCAN), ROCKLAND COUNTY CONSERVATION ASSOCIATION, INC. (RCCA), PUBLIC HEALTH AND SUSTAINABLE ENERGY (PHASE), and SIERRA CLUB - ATLANTIC CHAPTER (SIERRA CLUB),

Petitioners,

-- v. --

U.S. NUCLEAR REGULATORY COMMISSION,

Respondent,

ENTERGY NUCLEAR OPERATIONS, INC.,

Intervenor.

-------------------------------------------------------x

B e f o r e :  WALKER and WALLACE,* Circuit Judges.**

Pursuant to the Hobbs Act, Petitioners seek review of a final order of the U.S. Nuclear Regulatory Commission, granting

---

* The Honorable J. Clifford Wallace, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

** The Honorable Sonia Sotomayor, originally a member of the panel, was elevated to the Supreme Court on August 8, 2009. The two remaining members of the panel, who are in agreement, have determined the matter. See 28 U.S.C. § 46(d); Local Rule 0.14(2); United States v. Desimone, 140 F.3d 457 (2d Cir. 1998).

an exemption from certain fire safety regulations to Entergy Nuclear Operations, Inc., the operator of Indian Point nuclear power plant in Buchanan, NY.  We hold that we lack jurisdiction under the Hobbs Act to review exemptions.  We also conclude that the order being challenged is indeed an exemption, and not actually an amendment or other order covered by the Hobbs Act.

DISMISSED without prejudice for want of jurisdiction.

RICHARD L. BRODSKY, Albany, NY, for Petitioners.

ROBERT M. RADER, Senior Attorney, (Karen D. Cyr, General Counsel, John F. Cordes, Jr., Solicitor, on the brief), Office of the General Counsel, U.S. Nuclear Regulatory Commission, John Cruden, Acting Assistant Attorney General, Ellen Durkee, Trial Attorney, Appellate Section, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for Respondent.

MICHAEL B. WALLACE, (Paul E. Barnes, on the brief), Wise Carter Child & Caraway, P.A., Jackson, MS, for Intervenor.

JOHN J. SIPOS, Assistant Attorney General, (Barbara D. Underwood, Solicitor General, Katherine Kennedy, Special Deputy Attorney General, Michelle Aronowitz, Deputy Solicitor General, Janice A. Dean, Assistant Attorney General, Monica Wagner,

Assistant Solicitor General, *on the brief*), *for* Andrew M. Cuomo, Attorney General of the State of New York, New York, NY, *for Amicus Curiae New York State*.

JOHN M. WALKER, JR., <u>Circuit Judge</u>:

This case tests the limits of our jurisdiction under the Hobbs Act to review orders of the U.S. Nuclear Regulatory Commission ("NRC" or "Commission"). The NRC is the federal agency that licenses and regulates all nuclear power plants in the United States, including the Indian Point Energy Center ("Indian Point") in Buchanan, NY, operated by Entergy Nuclear Operations, Inc. ("Entergy"). The Atomic Energy Act ("AEA"), which gives the NRC its authority, requires the Commission to hold hearings before taking certain actions, such as granting or amending a license. Petitioners Richard Brodsky <u>et al.</u> contend that the NRC violated this hearing requirement when granting Indian Point an exemption from a fire safety regulation with which it was out of compliance. Petitioners also argue that, apart from the hearing requirement, the exemption is an invalid exercise of the NRC's authority.

Petitioners filed their action in this court pursuant to the Hobbs Act, which vests the courts of appeals with exclusive jurisdiction over NRC orders made reviewable by the AEA. We hold, however, that the Hobbs Act does not give us jurisdiction

-3-

over NRC exemptions.  We also conclude that the order being challenged by Petitioners is indeed an exemption, and not an amendment or other type of NRC order within the ambit of the Hobbs Act.  Accordingly, we dismiss the petition without prejudice for lack of jurisdiction.

**BACKGROUND**

Indian Point, like all nuclear power plants, is licensed and regulated by the NRC, pursuant to the AEA.  The AEA requires that, when granting a license, the NRC determine that a plant's operation is "in accord with the common defense and security and will provide adequate protection to the health and safety of the public."  42 U.S.C. § 2232(a).  Under the AEA, "all licenses shall be subject to amendment, revision, or modification . . . by reason of rules and regulations issued [by the NRC] in accordance with [the Act]."  Id. § 2237.

The AEA also mandates that the NRC hold hearings, if requested, when taking certain license-related actions:

> In any proceeding . . . for the granting, suspending, revoking, or amending of any license[,] . . . the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding, and shall admit any such person as a party to such proceeding.

Id. § 2239(a)(1)(A).  Additionally, the NRC has promulgated regulations requiring a public notice-and-comment period to precede any amendments to a license.  See 10 C.F.R. § 50.91(a).

NRC regulations also permit the agency to grant "exemptions

-4-

from the requirements of the regulations," as long as (1) the exemptions are "[a]uthorized by law, will not present an undue risk to the public health and safety, and are consistent with the common defense and security," and (2) "special circumstances are present." 10 C.F.R. § 50.12(a). The regulations set out six potential "special circumstances," any of which can justify an exemption. See id. § 50.12(a)(2)(i)-(vi).[1] The regulations do not require the NRC to hold hearings for exemptions.

In 1980, the NRC adopted fire safety regulations in response to a nearly catastrophic fire five years earlier at the Browns Ferry power plant. The regulations, inter alia, required nuclear plants to use fire barriers to protect the electrical cables that

---

[1] Special circumstances are "present whenever":

(i) Application of the regulation in the particular circumstances conflicts with other rules or requirements of the Commission; or

(ii) Application of the regulation in the particular circumstances would not serve the underlying purpose of the rule or is not necessary to achieve the underlying purpose of the rule; or

(iii) Compliance would result in undue hardship or other costs that are significantly in excess of those contemplated when the regulation was adopted, or that are significantly in excess of those incurred by others similarly situated; or

(iv) The exemption would result in benefit to the public health and safety that compensates for any decrease in safety that may result from the grant of the exemption; or

(v) The exemption would provide only temporary relief from the applicable regulation and the licensee or applicant has made good faith efforts to comply with the regulation; or

(vi) There is present any other material circumstance not considered when the regulation was adopted for which it would be in the public interest to grant an exemption.

10 C.F.R. § 50.12(a)(2).

power the plants' shutdown systems.  See Fire Protection Program for Operating Nuclear Power Plants, 45 Fed. Reg. 76,602, 76,608 (Nov. 19, 1980).  By shielding these electrical systems, the barriers would improve a plant's ability to shut down its reactors safely after a fire had started.  The regulations mandated that the barriers should be able to withstand a fire for at least one hour, and longer if the plant does not have automatic sprinklers installed.  See id.

In 1984, the NRC granted Indian Point several exemptions from compliance with certain of the fire protection program's requirements.  In doing so, the agency noted that the plant was using a popular fire barrier called Hemyc, which was rated for one hour of protection.  However, in 2005, the NRC discovered that Hemyc, despite its one-hour rating, could actually withstand a fire for only 27 to 49 minutes.  The agency required Indian Point and all other licensees "to confirm compliance with the existing applicable regulatory requirements in light of" this newfound problem.  Licensees were directed to "implement appropriate compensatory measures and develop plans to resolve any nonconformances."  The NRC asked for a response from each licensee so that it could "determine whether a facility license should be modified, suspended, or revoked, or whether other action should be taken."

In June 2006, Entergy alerted the NRC to potentially

noncompliant Hemyc barriers at Indian Point. Entergy stated that it could not meet NRC standards, but that it had implemented hourly "fire watch tours" and other compensatory measures. Entergy asked the NRC to issue Indian Point a revised exemption to reflect a thirty-minute fire resistance rating, in lieu of the one-hour rating, for two "[f]ire [a]reas" at the plant. In August 2007, Entergy amended its request to ask that one of the two fire areas be rated for 24 minutes.

On September 24, 2007, pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347, the NRC issued an environmental assessment ("EA") finding that Entergy's requested exemption would not significantly impact the environment. Four days later, the NRC granted the revised exemption, which was published in the Federal Register on October 4, 2007. Revision to Existing Exemptions, 72 Fed. Reg. 56,798 (Oct. 4, 2007). In approving Entergy's request, the agency explained that, "given the existing fire protection features in the affected fire zones, [Entergy] continues to meet the underlying purpose" of the fire protection program. Id. at 56,799.

On December 3, 2007, Petitioners wrote to the NRC objecting to the agency's "grant of an exemption . . . in an amendment" to the Indian Point license. Petitioners asked the agency to reopen the matter, grant them leave to intervene, and hold a public

-7-

hearing. The NRC responded on January 30, 2008, treating the petition solely as a request for a hearing. The agency explained that Petitioners were "challenging . . . an exemption from NRC regulations[,] . . . not a license amendment as asserted in [the] petition." The agency stated that the AEA "does not provide for hearings on exemptions from NRC regulations" and denied the request.

On March 27, 2008, Petitioners filed the instant petition in this court, seeking review of the NRC's order denying their December 3 petition. Petitioners contend that the September 28 exemption "fails, among other things, to provide reasonable assurance of adequate protection of the health and safety of the public as required by law under the [AEA]." The petition also argues that the NRC violated the AEA, NEPA, Administrative Procedures Act ("APA"), and various regulations by granting the exemption, and that the agency acted arbitrarily and abused its discretion in granting the exemption. Petitioners request that we vacate the exemption and remand for a public hearing on the matter.

The NRC moved to dismiss the petition, arguing that Petitioners' challenges to the September 28 exemption were untimely, and that the agency's January 30 order should be summarily affirmed because exemptions do not warrant hearings under NRC regulations. A previous panel of this court referred

the motion to us.  See Brodsky v. U.S. Nuclear Regulatory Comm'n, No. 08-1454-ag (2d Cir. July 7, 2008).  We reserved decision on that and two other motions.

**DISCUSSION**

**I.   Whether We Have Jurisdiction Over Exemptions**

Pursuant to the Hobbs Act, Petitioners have challenged the NRC's actions directly in this court without first filing in a district court.  The Act gives the courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the [NRC] made reviewable by section 2239 of title 42."  28 U.S.C. § 2342(4).[2]  Section 2239, in turn, makes reviewable "[a]ny final order entered in any proceeding of the kind specified in [§ 2239(a)]."  42 U.S.C. § 2239(b)(1).  And § 2239(a), in relevant part, encompasses "any proceeding . . . for the granting, suspending, revoking, or amending of any license."  In defining the scope of our jurisdiction under the Hobbs Act, § 2239(a) does not mention exemptions.

The NRC contends that the Hobbs Act should nonetheless apply to exemptions because of the Supreme Court's decision in Florida Power & Light Co. v. Lorion, 470 U.S. 729 (1985).  Lorion sheds

---

[2]   The Hobbs Act actually refers to the Atomic Energy Commission ("AEC"), not the NRC, but the AEC has been abolished.  42 U.S.C. § 5814.  The AEC's functions (including licensing) have largely been transferred to the NRC, and NRC orders entered pursuant to those functions are reviewable as if entered by the AEC.  See 42 U.S.C. §§ 5841(f), 5871(g); Gen. Atomics v. U.S. Nuclear Regulatory Comm'n, 75 F.3d 536, 538 n.2 (9th Cir. 1996).

-9-

light on how § 2239(a) operates.  Section 2239(a) serves multiple ends:  In addition to establishing Hobbs Act jurisdiction in the courts of appeals, it also dictates when the NRC must hold hearings.  42 U.S.C. § 2239(a)(1)(A).  These two purposes may or may not coexist in particular instances.  For example, with respect to license amendments, § 2239(a) gives the courts of appeals the exclusive jurisdiction to review an amendment and simultaneously compels the NRC to hold a hearing (if requested) before issuing an amendment.  See id.  Lorion tells us, however, that the jurisdictional element and hearing requirement of § 2239(a) are not coextensive, because we have Hobbs Act jurisdiction over "all final orders in licensing proceedings whether or not a hearing before the Commission occurred or could have occurred."[3]  Lorion, 470 U.S. at 737.  The NRC argues that this distinction between § 2239(a)'s two elements establishes that we have Hobbs Act jurisdiction over exemptions even though, under § 2239(a), exemptions do not require hearings.  We disagree.

In separating § 2239(a)'s hearing requirement from the provision's jurisdictional component, Lorion did not alter the basis for jurisdiction pursuant to that section: we have jurisdiction over only an appeal from an order "issued in a

_____

[3]  For instance, the Lorion Court noted that we have Hobbs Act jurisdiction over final orders in summary proceedings and informal NRC rulemaking, even though hearings may be unavailable with respect to each.  See 470 U.S. at 742 & n.10.

-10-

'proceeding . . . for the granting, suspending, revoking, or amending of any license.'"  Id. at 735 (quoting 42 U.S.C. § 2239(a)(1)) (ellipsis in original).  The Supreme Court has commanded "strict fidelity to the[] terms" of judicial review provisions that create jurisdiction, such as those contained in the Hobbs Act.  Stone v. INS, 514 U.S. 386, 405 (1995).  The plain text of § 2239(a) does not confer appellate jurisdiction over final orders issued in proceedings involving exemptions, irrespective of any hearing requirement.

Lorion's facts are instructive on this point.  Lorion specifically held that the Hobbs Act gives the courts of appeals exclusive jurisdiction to review the NRC's denial of a citizen petition without a hearing.  Id. at 746.  The NRC suggests that the Hobbs Act similarly applies to an appeal from a final order granting an exemption without a hearing.  But a citizen petition is a "request to institute a proceeding . . . to modify, suspend, or revoke a license."  10 C.F.R. § 2.206(a) (emphasis added).  The petition is "but the first step in a process that will, if not terminated for any reason, culminate in a full formal proceeding under 42 U.S.C. § 2239(a)(1)."  Lorion, 470 U.S. at 745 n.11.

In contrast, the NRC contends that an exemption is distinct from "the granting, suspending, revoking, or amending" of a license.  We think this is a reasonable interpretation of the

-11-

Hobbs Act, and one that deserves deference.  See Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837 (1984).  The NRC takes this stance to avoid having to hold hearings for exemptions; but by asserting that exemptions are different from amendments, a position to which we defer, the NRC necessarily deprives us of the ability to review exemptions pursuant to § 2239(a).

There are, of course, policy advantages in finding Hobbs Act jurisdiction over exemptions.  Placing initial review of agency action in the courts of appeals improves judicial efficiency. "The factfinding capacity of the district court is . . . typically unnecessary to judicial review of agency decisionmaking," and thus proceeding in the district court often adds an unneeded layer of review.  Lorion, 470 U.S. at 744-45. These advantages led the Lorion Court to hold that, "[a]bsent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals."  Id. at 745.  The First Circuit gave this policy "special weight" when finding that it had Hobbs Act jurisdiction to review NRC rules that, as a textual matter, "appear[ed] to fall outside" the Act. Citizens Awareness Network, Inc. v. United States, 391 F.3d 338, 346-47 (1st Cir. 2004).  But ultimately, policies alone are not

-12-

dispositive. "Whether initial subject-matter jurisdiction lies initially in the courts of appeals must of course be governed by the intent of Congress and not by any views we may have about sound policy." Lorion, 470 U.S. at 746.

"[T]he plain language of the enacted text is the best indicator of intent." Nixon v. United States, 506 U.S. 224, 232 (1993). Indeed, when the First Circuit broadly construed its Hobbs Act jurisdiction in light of the Lorion policies, the statutory text still constrained the court to hold that it could "review any NRC action that could be cognizable in a petition for review from a proceeding under section 2239." Citizens Awareness Network, 391 F.3d at 347 (emphasis added). Here, we cannot read exemptions into the plain text of § 2239(a), particularly when the NRC itself (to which deference is owed) is urging that exemptions are different from "amending . . . [a] license" and the other orders mentioned in that section. See, e.g., Resp't's Mot. to Dismiss at 7 ("An exemption is not a licensing action or rulemaking."); Resp't's Br. at 39 ("License amendments and post-licensing exemptions are entirely distinct and serve distinct purposes under NRC's regulatory scheme . . . ."). Moreover, the NRC's exemption program has been on the books in some form since 1956, see 21 Fed. Reg. 356 (Jan. 19, 1956), and Congress has amended § 2239(a) since then, see Energy Policy Act of 1992, Pub. L. 102-486, 106 Stat. 2776, 3120, but has never included

exemptions in the statute's text.  This reinforces our view, evident from the text, that Congress intended to have exemptions treated differently from the orders mentioned in § 2239(a).

The NRC points out that the First and Sixth Circuits have each reviewed an exemption under the Hobbs Act.  In both cases, however, other orders plainly within § 2239(a)'s scope were also being challenged.  In Commonwealth of Massachusetts v. U.S. Nuclear Regulatory Commission, 878 F.2d 1516 (1st Cir. 1989), the petitioners appealed not only an NRC exemption, but also a citizen petition denial (the subject of Lorion) and a decision allowing a previously shutdown plant to resume operations.  Id. at 1519-20.  Similarly, Kelley v. Selin, 42 F.3d 1501 (6th Cir. 1995), concerned several NRC orders, only one of which was an exemption.  Id. at 1503-04.  Neither case explained how or why exemptions fall under the Hobbs Act.  It is possible that the issue was not squarely presented to those courts, which frequently occurs when parties prefer that the court decide an issue despite its potential jurisdictional infirmity, especially when the problem is relevant to only part of the appeal.  It is also possible that the two courts assumed some type of supplemental jurisdiction over the exemption, in light of their undisputed Hobbs Act jurisdiction over the other orders at issue.  See Conoco, Inc. v. Skinner, 970 F.2d 1206, 1214 n.10 (3d Cir. 1992) ("As long as this court has jurisdiction over one of the

-14-

challenged regulations, the interests of judicial economy and efficiency allow us to hear the entire matter."). Regardless, to the extent that Commonwealth of Massachusetts and Kelley are inconsistent with our jurisdictional analysis, we decline to follow them.

We therefore hold that we lack jurisdiction under the Hobbs Act to review an NRC exemption. In the absence of jurisdiction, we lack the authority to review not only an NRC order that issues an exemption, but also any orders "preliminary or ancillary" to an exemption, such as a denial of a hearing request. Lorion, 470 U.S. at 743 ("[R]eview of orders resolving issues preliminary or ancillary to the core issue in a proceeding should be reviewed in the same forum as the final order resolving the core issue."). But our inquiry does not end there, because we lack jurisdiction in this case only if the challenged NRC order is indeed an exemption and not an amendment or otherwise within the purview of § 2239, an issue to which we now turn.

**II.  Whether the NRC's Order is an Exemption**

Whether the challenged order is an exemption, as the NRC has labeled it and thus beyond our jurisdiction, or is properly regarded as an amendment and within our Hobbs Act jurisdiction, is itself an issue that is within our jurisdiction. See Estate of Pew v. Cardarelli, 527 F.3d 25, 28 (2d Cir. 2008) ("As always, we have jurisdiction to determine our jurisdiction.").

-15-

"The particular label placed upon [an order] by [an agency] is not necessarily conclusive, for it is the substance of what the [agency] has purported to do and has done which is decisive." Columbia Broad. Sys., Inc. v. United States, 316 U.S. 407, 416 (1942). Still, the NRC's labels, though not dispositive, deserve deference when those labels are reasonable. The NRC, in deciding whether to treat an order as an exemption, applies its regulations governing when exemptions can be granted. See 10 C.F.R. § 50.12. An agency's application of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation[s]." Auer v. Robbins, 519 U.S. 452, 461 (1997) (internal quotation marks omitted); see also Fed. Express Corp. v. Holowecki, 128 S. Ct. 1147, 1155 (2008) ("[T]he agency is entitled to . . . deference when it adopts a reasonable interpretation of regulations it has put in force."). We serve as an important check on the agency's decisionmaking process, but ultimately the agency's judgment, if reasonable, must prevail.

Here, we think the NRC reasonably applied its regulations when it classified the relief granted to Indian Point as an exemption.[4] Consistent with 10 C.F.R. § 50.12, the agency concluded that treating the challenged order as an exemption was authorized by law, presented no undue risk to public health and

---

[4] We assume without deciding that the regulations themselves are valid. Although the parties contest the issue, our lack of jurisdiction precludes us from resolving it.

-16-

safety, and was consistent with the common defense and security. As required by 10 C.F.R. § 50.12, the NRC also found that "special circumstances" justified this exemption: specifically, that "the underlying purpose" of the fire safety rule would still be satisfied after the modification. See 10 C.F.R. § 50.12(a)(2)(ii). Although it appears that the NRC could have alternatively treated the order as an amendment to Indian Point's license, the Commission applied its regulations reasonably in opting instead to grant Indian Point an exemption.

Neither Petitioners nor amicus curiae New York State have persuaded us otherwise. Petitioners argue that this exemption should be deemed an amendment because it is permanent, noting that the First Circuit found that the exemption at issue in Commonwealth of Massachusetts did "not amount to a license amendment" because it had only "temporarily exempted the licensee" from a rule. 878 F.2d at 1521. But the NRC had granted that exemption pursuant to 10 C.F.R. § 50.12(a)(2)(v), which allows exemptions providing "temporary relief from the applicable regulation." 878 F.2d at 1521 & n.7. In citing the temporary nature of the exemption before it, the First Circuit confirmed that the NRC had applied its regulations reasonably, but did not announce a general standard for distinguishing exemptions from amendments. Nor would such a standard comport with the NRC regulations: a requirement that exemptions must be

-17-

temporary would conflict with the five "special circumstances" that allow for exemptions even if the relief is permanent.  See 10 C.F.R. § 50.12(a)(2)(i)-(iv), (vi); supra note 1.

We also reject New York State's position that a modification, purported to be an exemption, should be treated as an amendment if it relaxes a safety standard.  The State's position may or may not be sound policy, but it lacks a basis in law.[5]

Petitioners' claim that the NRC requires hearings for exemptions involving "material questions directly related to an agency's licensing action" is also unavailing.  Pet'rs' Reply Br. at 19.  Petitioners rely solely on In re Private Fuel Storage, L.L.C., 53 N.R.C. 459 (2001), to demonstrate this alleged NRC practice, but Private Fuel Storage concerned the unrelated issue of whether claims normally appropriate for an exemption, and thus not warranting a hearing, nonetheless can be included in an ongoing licensing hearing.  Id. at 461, 466.  Here, there is no such hearing.

In sum, none of the standards offered by Petitioners and the State for deciding when to treat exemptions as amendments

---

[5]    The State relies on Bellotti v. U.S. Nuclear Regulatory Commission, 725 F.2d 1380 (D.C. Cir. 1983), to support its position, noting that Bellotti held that "automatic participation at a hearing may be denied only when the Commission is seeking to make a facility's operation safer."  Id. at 1383. However, Bellotti concerned the different question of whether the Massachusetts Attorney General could intervene in the statutorily required hearing for an amendment, see id. at 1381-82, and is therefore inapposite.

withstand scrutiny. More importantly, none of their proffered distinctions between exemptions and amendments establish that the NRC acted unreasonably in considering the modification at issue in this case to be an exemption.

We recognize that, under the NRC regulations, little appears to distinguish an exemption from an amendment. But as long as the NRC has applied its regulations reasonably, we will not displace the agency's judgment with our own as to whether an exemption or amendment is warranted. Accordingly, we defer to the NRC's classification in this case and hold that the modification order that the Commission granted to Entergy and labeled an exemption is indeed an exemption. Petitioners challenge only that exemption in this appeal. Because we lack jurisdiction under the Hobbs Act over exemptions, we must dismiss the petition.

Finally, because we lack jurisdiction, we also express no opinion as to whether the NRC's hearing denial was proper, whether the exemption at issue is arbitrary and capricious, or the other issues raised by Petitioners. We hold only that Petitioners are indeed challenging an exemption, and that exemptions cannot be reviewed under the Hobbs Act.[6]

---

[6] We note that our holding does not necessarily shut off every avenue Petitioners may have at their disposal for relief. Petitioners are free to seek review in the district court of the NRC's actions pursuant to the APA. See Sharkey v. Quarantillo, 541 F.3d 75, 84 (2d Cir. 2008) ("[A] suit that arises under the APA is properly brought in district court.").

**CONCLUSION**

For the foregoing reasons, we DISMISS the petition without prejudice for want of jurisdiction.  All pending motions are denied as moot.