11-2016-cv
Brodsky v. U.S. Nuclear Regulatory Comm'n

# UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: May 3, 2012       Decided: January 7, 2013)

Docket No. 11-2016-cv

RICHARD L. BRODSKY, New York State Assemblyman, From the 92nd Assembly District, in His Official and Individual Capacities, WESTCHESTER'S CITIZENS AWARENESS NETWORK (WESTCAN), SIERRA CLUB–ATLANTIC CHAPTER (SIERRA CLUB),

*Plaintiffs-Appellants*,

PUBLIC HEALTH AND SUSTAINABLE ENERGY (PHASE),

*Plaintiff*,

v.

UNITED STATES NUCLEAR REGULATORY COMMISSION,

*Defendant-Appellee*,

ENTERGY NUCLEAR OPERATIONS, INC.,

*Defendant.*

Before:

SACK and RAGGI, *Circuit Judges*, and SWAIN, *District Judge*.[*]

---

[*] Judge Laura Taylor Swain of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from an award of summary judgment by the United States District Court for the Southern District of New York (Loretta A. Preska, *Chief Judge*), in favor of the United States Nuclear Regulatory Commission ("NRC") on plaintiffs' challenge to the NRC's grant of an exemption to the Indian Point nuclear power plant from compliance with certain fire safety regulations. A summary order filed today affirms the judgment in part as to those of plaintiffs' challenges that we hold to be without merit. This opinion vacates the judgment in part, insofar as the district court rejected plaintiffs' argument that the exemption was granted in violation of the National Environmental Policy Act's public participation regulations, and remands the matter for further proceedings.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.

---

RICHARD L. BRODSKY, Esq., White Plains, New York, *for Plaintiffs-Appellants*.

BENJAMIN H. TORRANCE (Sarah S. Normand, *on the brief*), Assistant United States Attorneys, *on behalf of* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York, *for Defendant-Appellee*.

Kelly A. Berkell, Office of Assemblywoman Amy R. Paulin, Scarsdale, New York, *for* Amicus Curiae *New York Legislators*.

---

2

REENA RAGGI, *Circuit Judge*:

On September 28, 2007, defendant United States Nuclear Regulatory Commission ("NRC") granted defendant Entergy Nuclear Operations, Inc. ("Entergy"), an exemption from compliance with certain fire safety regulations at its Indian Point nuclear power plant operating unit No. 3 ("Indian Point 3"), located in Westchester County, New York. In December 2007, plaintiffs Richard Brodsky, a former member of the New York State Assembly; the Westchester's Citizens Awareness Network; and the Sierra Club–Atlantic Chapter, unsuccessfully petitioned the NRC to reopen the exemption proceeding and to hold a public hearing on the merits of Entergy's request. This court dismissed plaintiffs' direct appeal from the NRC's denial of that petition for lack of jurisdiction. See Brodsky v. U.S. Nuclear Regulatory Comm'n, 578 F.3d 175, 180 (2d Cir. 2009). Plaintiffs thereafter commenced the instant action in the United States District Court for the Southern District of New York (Loretta A. Preska, *Chief Judge*), alleging that the NRC's award of the exemption to Entergy violated the Administrative Procedure Act ("APA"), the Atomic Energy Act ("AEA"), and the National Environmental Policy Act ("NEPA"). On this appeal, plaintiffs challenge the district court's award of summary judgment in favor of Entergy on these claims. See Brodsky v. U.S. Nuclear Regulatory Comm'n, 783 F. Supp. 2d 448, 450 (S.D.N.Y. 2011).

By summary order filed today, we affirm the challenged judgment in all respects but one, which is the subject of this opinion. Specifically, insofar as plaintiffs contend

that the NRC granted the challenged exemption in violation of NEPA's regulations, which allow for public involvement where appropriate and practicable, see 40 C.F.R. §§ 1501.4(b), 1506.6(c), we conclude that the agency record does not permit a reviewing court to determine whether a reasoned basis exists for the NRC's decision not to afford any such public involvement in the exemption decision. We therefore vacate the judgment of the district court, which implicitly rejected this argument, with respect to plaintiffs' NEPA challenge only, and we remand this case to the district court with instructions for it in turn to remand to the NRC so that the agency may (1) supplement the administrative record to explain why allowing public input into the exemption request was inappropriate or impracticable, or (2) take such other action as it may deem appropriate to resolve this issue. See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("[I]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). This panel will retain jurisdiction for the purpose of ruling, if necessary, on any appeal from a further district court judgment addressing the agency's action on remand. See United States v. Jacobson, 15 F.3d 19 (2d Cir. 1994).

## I.    Factual Background

The Atomic Energy Act of 1954 "establishes a comprehensive regulatory framework for the ongoing review of nuclear power plants located in the United States"

4

and vests the Atomic Energy Commission, and its successor agency, the NRC, with broad regulatory power to ensure "that the generation and transmission of nuclear power does not unreasonably threaten the public welfare." County of Rockland v. U.S. Nuclear Regulatory Comm'n, 709 F.2d 766, 769 (2d Cir. 1983); accord Riverkeeper, Inc. v. Collins, 359 F.3d 156, 168 (2d Cir. 2004) (noting NRC's mission to "insure adequate protection of public health and safety from risks associated with nuclear plants"). Pursuant to that authority, in 1980, the NRC upgraded its fire safety rules in response to a catastrophic fire at the Browns Ferry power plant near Decatur, Alabama. See Fire Protection Program for Operating Nuclear Power Plants, 45 Fed. Reg. 76,602 (Nov. 19, 1980); 10 C.F.R. pt. 50, App. R. Regulations authorize the NRC to grant exemptions from specific fire safety protocols, provided the applied-for exemption does "not present an undue risk to the public health and safety," 10 C.F.R. § 50.12(a)(1), and "special circumstances" warrant the exemption, id. § 50.12(a)(2). The exemption process has been recognized to afford a "critical element of flexibility" in potentially cumbersome fire safety compliance by allowing power plants "to show that alternative fire protection systems protect the public safety at the same high level as the system chosen by the Commission." Connecticut Light & Power Co. v. Nuclear Regulatory Comm'n, 673 F.2d 525, 530, 537 (D.C. Cir. 1982).

In both 1984 and 1987, Indian Point 3 secured exemptions from fire safety regulations not relevant here. The grant of these exemptions was by no means pro forma.

5

As the district court observed, the NRC has had "a long history of reviewing the [fire safety] regulations at [Indian Point 3] and in most cases has denied requests for exemptions." Brodsky v. U.S. Nuclear Regulatory Comm'n, 783 F. Supp. 2d at 452 n.3 (noting that NRC staff recommended granting only eight of twenty-six exemptions requested after regulations took effect).

Existing rules contemplate a "defense-in-depth" approach to fire protection with three objectives: (1) "[t]o prevent fires from starting"; (2) "[t]o detect rapidly, control, and extinguish promptly those fires that do occur"; and (3) "[t]o provide protection for structures, systems, and components important to safety so that a fire that is not promptly extinguished by the fire suppression activities will not prevent the safe shutdown of the plant." 10 C.F.R. pt. 50, App. R, II.A. A plant may satisfy the third objective by enclosing a redundant safety shutdown system in a barrier that will withstand a fire for at least one hour, if accompanied by fire detectors and an automatic fire suppression system. See id. III.G.2.

Since at least 1987, Indian Point 3 has relied on a fire barrier called Hemyc, originally rated for one hour of fire protection, to satisfy the third objective of the NRC's fire safety regulations. The NRC first began to develop concerns about Hemyc's effectiveness in 1999, prompting renewed testing of that material. On April 1, 2005, the NRC informed its licensees that Hemyc and another fire barrier material, MT, did not perform for one hour as designed because of shrinkage of the material during testing.

6

Later that month, NRC staff held a public meeting with licensees and interested members of the public to discuss these concerns.

In May 2005, a number of citizen groups petitioned the NRC pursuant to 10 C.F.R. § 2.206 to modify or suspend the operating licenses of various nuclear power plants, including Indian Point 3, that were using Hemyc or MT for fire safety, arguing that the plants were "operating in violation of NRC fire protection requirements . . . resulting in a degradation of defense-in-depth fire protection and safe shut down in the event of a significant fire." All Nuclear Power Plants That Use Hemyc/MT Fire Barriers, 71 Fed. Reg. 3,344-01, 3,345 (Jan. 20, 2006) (notice of decision under § 2.206). On January 20, 2006, the NRC granted the citizens groups' petition in part, publicly stating that it would "review all affected plants in detail" in an effort to "take appropriate actions to resolve the issues with the use of Hemyc[] material commensurate with the safety significance of the protected systems." Id.; see also In re Carolina Power & Light Co. (Shearon Harris Nuclear Power Station, Unit 1; H.B. Robinson Plant, Unit 2), 63 N.R.C. 133, 140 (2006) (stating that NRC shared citizens groups' concerns and was addressing Hemyc "performance issues in an expeditious manner"). Pursuant thereto, on April 10, 2006, the NRC issued a generic letter entitled "Potentially Nonconforming Hemyc and MT Fire Barrier Configurations," directing all its power plant licensees to evaluate their facilities to ensure compliance with applicable fire safety regulations and to furnish information confirming such compliance.

In its June 8, 2006 response to this NRC directive, Entergy reported that Indian Point 3 was not in compliance with agency fire safety protocols due to its use of Hemyc. Entergy stated that it had instituted compensatory measures, such as conducting hourly fire-watch tours and ensuring the operability of its fire detection systems. On July 24, 2006, Entergy applied to the NRC for an expansion of its existing exemptions to require only a 30-minute fire resistance rating in two areas of Indian Point 3 protected by Hemyc. By August 16, 2007, however, Entergy had concluded that it could not guarantee satisfaction of a 30-minute resistance rating in one of the areas and sought NRC allowance for a 24-minute rating at that site.

On August 27, 2007, the NRC's Fire Protection Branch recommended granting Entergy the requested exemption. On September 24, 2007, the NRC issued a related environmental assessment ("EA"), see 40 C.F.R. § 1508.9, and finding of no significant impact ("FONSI"), see id. § 1508.13. These were published in the Federal Register on September 28, 2007, see Entergy Nuclear Operations, Inc., Indian Point Nuclear Generating Unit No. 3, 72 Fed. Reg. 55,254-01 (Sept. 28, 2007) (EA and FONSI), the same day that the NRC awarded the exemption, which itself was published in the Federal Register on October 4, 2007, see Entergy Nuclear Operations, Inc., Indian Point Nuclear Generating Unit No. 3, 72 Fed. Reg. 56,798-02 (Oct. 4, 2007) (revision to existing exemptions).[1]

---

[1] In granting the exemption, the NRC concluded that the requested 30- and 24-minute fire barriers sufficed to "ensure that one of the redundant trains necessary to achieve and

8

Plaintiffs submit that the September 28, 2007 publication of the EA and FONSI was the first public notice of Entergy's 2006 exemption request. On the day the exemption grant was made public, New York's Attorney General filed a written request for the NRC to reconsider the exemption and to solicit public comment, which the NRC denied. On December 3, 2007, plaintiffs presented the NRC with a similar request, contending, among other things, that it was implausible that the steps needed to control a fire could be taken in 24 minutes, that such a scenario had not been adequately tested, and that the generic testing relied upon by Entergy and the NRC did not adequately consider the conditions or equipment present at Indian Point 3.[2] Plaintiffs offered various supporting documents, including an affidavit from Ulrich Witte, a mechanical engineer whose 24 years' experience included responsibility for fire safety compliance at the Rancho Seco Nuclear Power Station in Sacramento, California. Witte labeled Entergy's

maintain hot shutdown conditions remains free of fire damage in the event of a fire," 72 Fed. Reg. at 56,801, and thus that "application of the regulation [wa]s not necessary to achieve the underlying purpose of the rule," id. (citing 10 C.F.R. § 50.12(a)(2)(ii) (listing stated reason among "special circumstances" justifying exemption)). The NRC also emphasized Indian Point 3's compliance with the first and second objectives of "defense-in-depth" protection, noting the relative absence of ignition sources in the affected fire areas, the fact that the principal combustibles were flame-retardant asbestos-jacketed cables, and the presence of automatic fire detection systems and automatic and manual fire suppression systems, all of which would limit the severity of a credible fire. Referencing this reasoning, the EA and FONSI stated that Indian Point 3's continued use of the "Hemyc fire barrier in these zones . . . will not significantly increase the probability or consequences of accidents." 72 Fed. Reg. at 55,254.

[2] Plaintiffs also asserted that the NRC's decision did not factor in security risks posed by plant employees or from a light aircraft strike on the facility.

24-minute timeframe "entirely unrealistic." Witte Decl. 3. He also faulted the NRC for offsetting the high risks posed in the event of a fire at Indian Point 3 against the low risk that a fire would ignite or that the areas at issue would combust. The NRC denied plaintiffs' request on January 30, 2008, stating only that Entergy's application did not trigger hearing rights under the AEA.

On March 27, 2008, plaintiffs, with the support of New York State as amicus curiae, petitioned this court for review of the NRC's denial pursuant to 28 U.S.C. § 2342(4) (conferring exclusive jurisdiction on Courts of Appeals to review "all final orders of the [NRC] made reviewable by [42 U.S.C. § 2239]"). This court dismissed the petition on August 27, 2009, concluding sua sponte that we lacked jurisdiction under the "plain text" of § 2239. Brodsky v. U.S. Nuclear Regulatory Comm'n, 578 F.3d at 180–81 (construing § 2239(a)(1)(A)'s reference to "granting, suspending, revoking, or amending of any license," over which direct appellate review may be had, not to include issuance of exemption).

Plaintiffs commenced the instant action in the district court on December 30, 2009, alleging violations of the APA, AEA, and NEPA. By Opinion and Order dated March 4, 2011, the district court awarded summary judgment to defendants on all claims. See Brodsky v. U.S. Nuclear Regulatory Comm'n, 783 F. Supp. 2d 448. While the district court discussed various of plaintiffs' challenges, it did not specifically address their

10

argument that the NRC violated their NEPA right, as members of the public, to participate in the exemption process. We consider that claim here.

## II.     Discussion

### A.     Standard of Review

NEPA is, at its core, "a procedural statute that mandates a process rather than a particular result." Stewart Park & Reserve Coal., Inc. (SPARC) v. Slater, 352 F.3d 545, 557 (2d Cir. 2003). Thus, judicial "review of administrative choices under NEPA . . . focuses primarily on the procedural regularity of the decision," rather than on its substance. Sierra Club v. U.S. Army Corps of Eng'rs, 772 F.2d 1043, 1055 (2d Cir. 1985); see Coalition on W. Valley Nuclear Wastes v. Chu, 592 F.3d 306, 310 (2d Cir. 2009) (reiterating that reviewing court's role is limited to "insur[ing] that the agency has taken a hard look at environmental consequences . . . of the action to be taken," rather than evaluating merits of decision (internal quotation marks omitted)).

Because NEPA does not itself provide for judicial review, the APA controls. See Sierra Club v. U.S. Army Corps of Eng'rs, 772 F.2d at 1050. Pursuant to the APA, courts review contested agency action to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although highly deferential, this standard "does not equate to no review." Wilson v. CIA, 586 F.3d 171, 185 (2d Cir. 2009) (describing boundaries of deferential review in another context). Notably, the APA contemplates that, in deciding a challenge to agency action, a court will

11

review the administrative record to ensure "that the agency examined the relevant data and articulated a satisfactory explanation for its action. Moreover, the agency's decision must reveal a rational connection between the facts found and the choice made." Natural Res. Def. Council, Inc. v. U.S. EPA, 658 F.3d 200, 215 (2d Cir. 2011) (internal quotation marks and alterations omitted); see also National Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997) (confining judicial review to administrative record compiled by agency when it made challenged decision). Further, while a court can "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," it may not itself "supply a reasoned basis for the agency's action that the agency itself has not given." Natural Res. Def. Council, Inc. v. U.S. EPA, 658 F.3d at 215 (internal quotation marks omitted). Thus, when an administrative record is insufficient to permit a court to discern an agency's reasoning or to conclude that the agency has considered all relevant factors, a court may remand the matter to the agency to allow for supplementation of the record. See Florida Power & Light Co. v. Lorion, 470 U.S. at 744; National Audubon Soc'y v. Hoffman, 132 F.3d at 14. This is such a case.

B.      Public Participation in the NEPA Process

NEPA's animating purposes and methods of operation have been discussed at length in prior decisions. See, e.g., Department of Transp. v. Pub. Citizen, 541 U.S. 752, 757–58 (2004) (describing NEPA's statutory and regulatory scheme); National Audubon Soc'y v. Hoffman, 132 F.3d at 12. For purposes of this appeal, we focus on those parts of

12

the statute and regulations providing for public disclosure and input regarding the environmental impact of contemplated agency action. See Pogliani v. U.S. Army Corps of Eng'rs, 306 F.3d 1235, 1237–38 (2d Cir. 2002) (recognizing that Congress enacted NEPA "to ensure that federal agencies examine and disclose the potential environmental impacts of projects before allowing them to proceed," which process "must involve the public").

NEPA directs agencies contemplating "major [f]ederal actions significantly affecting the quality of the human environment" to prepare an Environmental Impact Statement ("EIS") demonstrating agency consideration of the reasonably foreseeable environmental effects. 42 U.S.C. § 4332(2)(C); accord City of New York v. Slater, 145 F.3d 568, 571 (2d Cir. 1998). Implementing regulations promulgated by the Council on Environmental Quality ("CEQ") permit agencies categorically to exclude certain classes of actions from the EIS requirement on the ground that such actions do not individually or cumulatively have a significant effect on the environment. See 40 C.F.R. §§ 1507.3(b)(2), 1508.4; see also 10 C.F.R. § 51.22(c) (establishing categorical exclusions for various NRC actions).[3] In the absence of such a categorical exclusion, any

___

[3] At oral argument, the government suggested that the law was unclear as to whether CEQ's NEPA regulations bind the NRC. See Taxpayers of Mich. Against Casinos v. Norton, 433 F.3d 853, 861 (D.C. Cir. 2006) (noting that "binding effect of CEQ regulations is far from clear" because authority derived from executive order rather than legislation); Limerick Ecology Action, Inc. v. U.S. Nuclear Regulatory Comm'n, 869 F.2d 719, 725 (3d Cir. 1989) ("CEQ guidelines are not binding on an agency that has not expressly adopted them."). The weight of authority, however, holds CEQ regulations binding on federal agencies. See, e.g., Piedmont Envtl. Council v. FERC, 558 F.3d 304, 318 (4th Cir. 2009); City of Dallas v. Hall,

doubt as to whether contemplated action requires an EIS must be resolved by preparing an EA. See Department of Transp. v. Pub. Citizen, 541 U.S. at 757 (describing EA as "concise public document that briefly provides sufficient evidence and analysis for determining whether to prepare an EIS" (alterations omitted) (citing 40 C.F.R. § 1508.9(a))). If, pursuant to the EA, the agency concludes that no EIS is required, it must provide its reasons in a FONSI. See id. at 757–58; 40 C.F.R. §§ 1501.4(e), 1508.13. As discussed in the background section of this opinion, the NRC published an EA and FONSI with respect to the exemption challenged in this case on September 28, 2007, the same date that it granted the exemption.

While NEPA itself does not assign the public any particular role in the aforementioned processes, see generally Hanly v. Kleindienst, 471 F.2d 823, 835 (2d Cir. 1972) (recognizing that "[t]here is no statutory requirement" for public hearings under NEPA), implementing regulations identify public scrutiny as an "essential" part of the NEPA process, 40 C.F.R. § 1500.1(b) ("Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA."). Thus, the

---

562 F.3d 712, 722 (5th Cir. 2009); Colorado Wild v. U.S. Forest Serv., 435 F.3d 1204, 1209 (10th Cir. 2006); Defenders of Wildlife v. Hogarth, 330 F.3d 1358, 1369 (Fed. Cir. 2003); Heartwood, Inc. v. U.S. Forest Serv., 230 F.3d 947, 949 (7th Cir. 2000). Because the government conceded, at least for purposes of this appeal, that it would be fair to assume that the regulations do bind the NRC, cf. 10 C.F.R. § 51.10 (noting NRC policy voluntarily to take account of CEQ regulations, subject to certain conditions), we operate on that assumption here, deeming any contrary argument forfeited, see Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) (holding that "stating an issue without advancing an argument" forfeits issue on appeal).

14

regulations provide that "NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken." Id. Moreover, "[a]gencies shall" both "[m]ake diligent efforts to involve the public in preparing and implementing their NEPA procedures" and "solicit appropriate information from the public." Id. § 1506.6(a), (d). Such involvement can include public hearings "whenever appropriate," a determination informed by whether there is "[s]ubstantial environmental controversy concerning the proposed action or substantial interest in holding the hearing." Id. § 1506.6(c). Given the discretion afforded agencies by the regulatory text, however, we will not readily second guess an agency decision not to hold a public hearing in a particular case. See Friends of Ompompanoosuc v. FERC, 968 F.2d 1549, 1557 (2d Cir. 1992) (upholding agency decision to forgo public hearing in connection with licensing of hydroelectric power station despite panel's view that "hearing might have been beneficial").

As some courts have recognized, these regulations do not clearly define how public involvement requirements might apply where, as here, an agency prepares only an EA (and FONSI) and not an EIS. See Taxpayers of Mich. Against Casinos v. Norton, 433 F.3d 852, 861 (D.C. Cir. 2006); Greater Yellowstone Coal. v. Flowers, 359 F.3d 1257, 1279 (10th Cir. 2004). Whereas regulations require a draft EIS to be circulated for public comment prior to its adoption, see 40 C.F.R. §§ 1502.9, 1503.1, in the case of an EA, the agency is required to "involve environmental agencies, applicants, and the

15

public" only "to the extent practicable," id. § 1501.4(b). And only in "limited circumstances" must an agency make a FONSI "available for public review . . . for 30 days" prior to agency action. Id. § 1501.4(e)(2); see Pogliani v. U.S. Army Corps of Eng'rs, 306 F.3d at 1238 (citing § 1501.4(e)(2) in rejecting argument that Army Corps, in issuing permit for construction of gas-fired power plant, "erred by failing to release its draft EA and FONSI for public comment prior to their issuance"). Thus, at the same time that the regulations "encourage public involvement in" EAs, Town of Rye v. Skinner, 907 F.2d 23, 24 (2d Cir. 1990), they afford agencies considerable discretion to decide the extent to which such public involvement is "practicable," 40 C.F.R. § 1501.4(b); see generally Taxpayers of Mich. Against Casinos v. Norton, 433 F.3d at 861 (noting agency's "significant discretion in determining" how it complies with NEPA's public participation regulations in preparing EA). When the exercise of that discretion is challenged on appeal, the reviewing court properly considers whether the lack of public input prevented the agency "from weighing all the factors essential to exercising its judgment [under NEPA] in a reasonable manner." Friends of Ompompanoosuc v. FERC, 968 F.2d at 1557.

C.  The Record Is Insufficient To Permit Judicial Review of Plaintiffs' Public Participation Challenge to the Granted Exemption

In opposing plaintiffs' NEPA challenge to the exemption granted to Indian Point 3, the NRC maintains that "no hearing was required under the NEPA regulations." NRC Br.

16

58.  That proposition is not novel, see Friends of Ompompanoosuc v. FERC, 968 F.2d at 1557, but it misses the point of plaintiffs' argument.  Plaintiffs do not contend that the NRC was required to afford a specific type of public participation; rather, they complain that the NRC failed to notify or solicit feedback from the public at all regarding the challenged exemption.  See Appellants' Br. 53.

The NRC cites no case in which a court has held an agency's issuance of an EA and FONSI to satisfy NEPA despite a comparable lack of public participation.  While we have on two occasions ruled that an agency complied with NEPA despite failing to circulate final versions of its analyses for comment prior to their publication, the agencies had previously held multiple hearings or afforded other opportunities for public input.  See Pogliani v. U.S. Army Corps of Eng'rs, 306 F.3d at 1238; Town of Rye v. Skinner, 907 F.2d at 24.  Conversely, in a case in which we held that no public hearing under NEPA was required, we reviewed an administrative record showing that public input in other forms had alerted the agency to the citizenry's concerns before the challenged decision was reached.  See Friends of Ompompanoosuc, 968 F.2d at 1552 (noting that, in preparing EA, agency had "obtained comments on the application from local citizens and citizens groups" as well as State of Vermont).  The record before us fails to provide any agency explanation for why no public participation was deemed practicable or appropriate with respect to the challenged exemption.[4]

---

[4] In a post-argument letter filed with the court pursuant to Fed. R. App. P. 28(j), the NRC suggests that plaintiffs had effective notice of Entergy's exemption request before the

Certainly, the record does not demonstrate, nor does the government argue, that exigent circumstances made it impracticable to afford public notice or participation in the fifteen months between Entergy's June 2006 application and the NRC's September 2007 publication of the EA and FONSI on the same day that it granted the exemption. Nor does the record reveal a basis for the NRC to conclude that notice and opportunity for public comment would not have been appropriate. Indeed, a contrary conclusion finds support in the record evidence of public interest in the question of how nuclear plants satisfied their fire barrier obligations. Once NRC testing raised questions about Hemyc's effectiveness, several environmental groups filed petitions with the NRC to modify or suspend the licenses of certain nuclear power plants, including Indian Point 3, relying on

September 2007 publication of the EA and FONSI because (1) on March 15, 2007, the NRC placed in its online document repository a request it had made to Entergy for more information regarding the exemption sought; and (2) on August 29, 2007, it similarly placed online Entergy's actual exemption application. Even if we were to take judicial notice of these belatedly proffered facts, which have been known to the government throughout this litigation, they would not alter our conclusion that remand is required. Nothing in the administrative record indicates that the agency itself relied on the existence of these electronic filings to deny plaintiffs' motion to reopen the exemption proceeding on the theory that plaintiffs had been provided with sufficient notice and opportunity to comment on the requested exemption before a final decision was made. See Natural Res. Def. Council, Inc. v. U.S. EPA, 658 F.3d at 215 (holding that reviewing court may not supply reasoned basis for agency action that agency itself has not given); cf. Theodore Roosevelt Conservation P'ship v. Salazar, 616 F.3d 497, 519–20 (D.C. Cir. 2010) (affirming Bureau of Land Management's compliance with NEPA in granting drilling permits, where agency had provided website notice that it was preparing EAs for drilling sites approximately one month before granting permits and had made permit applications available for public inspection beginning almost two years earlier). On the record before us, we cannot confidently conclude that this website notice afforded plaintiffs "a substantial opportunity to comment on [Entergy's] proposals before they were approved." Theodore Roosevelt Conservation P'ship v. Salazar, 616 F.3d at 519 (internal quotation marks omitted).

18

Hemyc as a fire barrier. See 71 Fed. Reg. at 3,345. Insofar as the NRC argues that plaintiffs have failed to demonstrate a public controversy in the subject matter of Entergy's particular exemption request, we are not inclined to assume in light of these petitions, and in the absence of a more specific agency statement, see National Audubon Soc'y v. Hoffman, 132 F.3d at 14, that the NRC's rationale for not providing notice of the exemption request or an opportunity for public comment represents a reasonable perception of public indifference to the matter, see generally American Bird Conservancy, Inc. v. FCC, 516 F.3d 1027, 1035 (D.C. Cir. 2008) (recognizing "Catch-22" in requiring plaintiffs to show public interest in or controversy over agency action that has not been meaningfully disclosed). In fact, events occurring immediately after public disclosure of the exemption caution against any such assumption by this court.

The very day the NRC's grant of an exemption to Indian Point 3 was published in the Federal Register, the State of New York lodged objections. Two months later, plaintiffs filed their own petition to reopen for reconsideration and public input. Contrary to the NRC's urging, plaintiffs' lengthy submission does not assert simple "opposition to a use." Friends of Ompompanoosuc v. FERC, 968 F.2d at 1557 (internal quotation marks omitted). Rather, it reveals a specific controversy regarding the NRC's conclusion that a 24-minute fire barrier is sufficient to protect Indian Point 3 from a catastrophic fire.

19

The NRC submits that even if these circumstances show that a public hearing might have been "beneficial," id., that is not enough to conclude that a hearing was legally required. We do not suggest otherwise. But the record in this case—devoid of any evidence of public input on Entergy's exemption request, and with no explanation by the NRC of its decision not to afford public participation of any kind—does not permit us to decide whether the agency nevertheless was capable of "weighing all the factors essential to exercising its judgment in a reasonable manner." Id.

In arguing otherwise, the NRC submits that its rationale for not granting plaintiffs' petition to reopen may reasonably be discerned from the fact that "[t]he EA here shows NRC found no risk of environmental effect at all," and therefore no possible "substantial environmental controversy." NRC 28(j) Letter 2. We are not persuaded. The NRC's own conclusion that the fire safety exemption grant to Entergy "will not have a significant effect on the quality of the human environment," 72 Fed. Reg. at 55,254; see 40 C.F.R. § 1508.13, cannot itself prove that there is no objective controversy regarding the subject matter of the exemption. Indeed, to the extent that the NRC found that the exemption will not "significantly increase the probability or consequences of accidents," 72 Fed. Reg. at 55,254, this conclusion is precisely the point disputed by plaintiffs and on which they seek to be heard. Insofar as the NRC declines to hear plaintiffs' concerns—not in a particular form, but at all—we think it best not to guess at the agency's reasons, but to remand for the agency to supplement the record so that it may explain its denial or

20

otherwise demonstrate that it has in fact taken the kind of "hard look at environmental consequences" that it would have taken if the public were allowed to comment on the exemption request. Coalition on W. Valley Nuclear Wastes v. Chu, 592 F.3d at 310 (internal quotation marks omitted).

The NRC argues additionally that any failure to afford public participation before granting the exemption in this case was harmless because plaintiffs were free to initiate a citizen petition to challenge the exemption after the fact. See 10 C.F.R. § 2.206. It is by no means apparent that the mere availability of a post-hoc petition process renders harmless any and every failure by an agency to abide by NEPA's public participation regulations. Cf. Friends of Ompompanoosuc v. FERC, 968 F.2d at 1557–58 (holding that petitioner could not show prejudice from agency's failure to circulate EA supplement given its ability "to petition [agency] for reconsideration and rehearing," combined with fact that it had obtained document with "ample time" to comment before agency decision). Were we to entertain this argument, we would have to consider it in the context of CEQ regulations providing that "NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken," 40 C.F.R. § 1500.1(b) (emphasis added), as well as the Supreme Court's admonition that the purpose of "the broad dissemination of information mandated by NEPA" is to "permit[] the public and other government agencies to react to the effects of a proposed action at a meaningful time," and not "after

21

it is too late to correct," <u>Marsh v. Or. Natural Res. Council</u>, 490 U.S. 360, 371 (1989). We do not foreclose the possibility that the availability of the citizen-petition process may dissuade a court from vacating a NEPA-defective agency decision that might still be corrected. Nevertheless, we think that where, as here, we order remand to afford the agency an opportunity to supplement the record to show that there was no error at all—or to take whatever steps it deems necessary to remove any doubt in that regard—it is in the interest of all parties, and of the public served by Indian Point 3, to proceed in that manner before considering whether the alleged errors should be dismissed as harmless.

In ordering remand, we are mindful that the Ninth Circuit has held that a "complete failure to involve or even inform the public about an agency's preparation of an EA and a FONSI" violates NEPA's public participation regulations. <u>Citizens For Better Forestry v. U.S. Dep't of Agric.</u>, 341 F.3d 961, 970 (9th Cir. 2003) (identifying violation despite fact that draft rule was published and public meetings held); <u>cf.</u> <u>Bering Strait Citizens v. U.S. Army Corps of Eng'rs</u>, 524 F.3d 938, 953 (9th Cir. 2008) (holding that, on facts presented, agency had satisfied its NEPA obligation when preparing EA to "provide the public with sufficient environmental information, considered in the totality of circumstances, to permit members of the public to weigh in with their views and thus inform the agency decision-making process"). This court, however, has previously suggested otherwise with respect to the right of advance public access to these particular analyses. <u>See</u> <u>Pogliani v. U.S. Army Corps of Eng'rs</u>, 306 F.3d at 1238. Thus, we deem

22

it premature to consider any categorical rule until after the agency has had the opportunity on remand to supplement the record as provided in the next section of this opinion.

D.    Procedure on Remand

Our decision today is narrow.  We pronounce no rule as to the degree or form of public participation required before the NRC can grant exemptions from its protocols. Nor do we hold that agencies always need to explain their decisions as to how much public participation to afford pursuant to NEPA.  We conclude only that, on the record presented in this case, we cannot conduct even deferential judicial review of plaintiffs' claim that the NRC granted the challenged exemption in violation of NEPA's public participation provisions.

We therefore vacate the judgment of the district court with respect to plaintiffs' NEPA challenge only, and we remand the matter to the district court with instructions for it in turn to remand to the NRC so that the agency may: (1) supplement the administrative record to provide an explanation, with supporting affidavits or findings of fact, as to why affording public input into the exemption request was inappropriate or impracticable; or (2) take other such action as it may deem appropriate to resolve this issue.  See Florida Power & Light Co. v. Lorion, 470 U.S. at 744; National Audubon Soc'y v. Hoffman, 132 F.3d at 14.

If plaintiffs conclude that the agency's response fails to allay their NEPA concerns, they should timely seek further review in the district court, which shall take

whatever steps it deems appropriate under the circumstances to dispose of plaintiffs' renewed NEPA claim. This panel will retain jurisdiction for the purpose of ruling, if necessary, on any timely appeal from the district court's final judgment. See United States v. Jacobson, 15 F.3d at 22. On a further appeal, we will set a schedule for expedited review on the basis of the augmented record. No oral argument will be heard absent further order of this Court.

## III.   Conclusion

To summarize, we conclude that plaintiffs' challenges to the NRC's grant of an exemption to Entergy from certain fire safety regulations in the operation of its Indian Point 3 nuclear power plant are generally without merit. In one respect, however—i.e., plaintiffs' claim that the NRC awarded the challenged exemption in violation of NEPA's public participation provisions—the administrative record is insufficient to permit meaningful judicial review. Thus, remand is necessary to allow the agency to supplement its decision.

The judgment of the district court is AFFIRMED IN PART in accordance with the summary order filed today and VACATED IN PART in accordance with this opinion, and the case is REMANDED for further proceedings consistent with this opinion, which proceedings are to be concluded within 120 days of the issuance of the mandate or such further time as this court shall authorize.

24