15-1330-cv
Brodsky v. United States Nuclear Regulatory Commission

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of June, two thousand sixteen.

PRESENT: ROBERT D. SACK,
　　　　　 REENA RAGGI,
　　　　　　　　　*Circuit Judges*,
　　　　　 LAURA TAYLOR SWAIN,
　　　　　　　　　*District Judge*.[*]

---------------------------------------------------------------------

RICHARD L. BRODSKY, New York State Assemblyman, from the 92nd Assembly District in his official and individual capacities,

　　　　　　　　　*Plaintiff-Appellant*,

WESTCHESTER'S CITIZENS' AWARENESS NETWORK (WESTCAN), PUBLIC HEALTH AND SUSTAINABLE ENERGY (PHASE), and SIERRA CLUB – ATLANTIC CHAPTER (SIERRA CLUB),

　　　　　　　　　*Plaintiffs*,

　　　　　　 v.　　　　　　　　　　　　　　　　　No. 15-1330-cv

UNITED STATES NUCLEAR REGULATORY COMMISSION,

　　　　　　　　　*Defendant-Appellee*,

---

[*] The Honorable Laura Taylor Swain, of the United States District Court for the Southern District of New York, sitting by designation.

ENTERGY NUCLEAR OPERATIONS, INC.,

<em>Defendant-Intervenor.</em>[†]

---------------------------------------------------------------------

| | |
|---|---|
| APPEARING FOR APPELLANT: | DANIEL J. KRAMER (Jacqueline P. Rubin, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York. |
| APPEARING FOR APPELLEE: | BENJAMIN H. TORRANCE, Assistant United States Attorney (Sarah S. Normand, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York. |
| APPEARING FOR INTERVENOR: | AMY C. ROMA (Lisa J. Fried, *on the brief*), Hogan Lovells US LLP, New York, New York. |
| FOR AMICI CURIAE NEW YORK CITY COUNCIL MEMBERS: | Judith L. Mogul, Morvillo Abramowitz Grand Iason & Anello P.C., New York, New York. |
| FOR AMICUS CURIAE UNITED STATES CONGRESSMAN SEAN PATRICK MALONEY: | Susan E. Brune, Brune & Richard LLP, New York, New York. |
| FOR AMICUS CURIAE NUCLEAR ENERGY INSTITUTE, INC.: | Ellen C. Ginsberg, Jonathan M. Rund, Nuclear Energy Institute, Inc., Washington, D.C.; David A. Repka, Winston & Strawn LLP, Washington, D.C. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, *Chief Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 5, 2015, is AFFIRMED.

---

[†] The Clerk of Court is directed to amend the caption as set forth above.

Plaintiff Richard L. Brodsky brought this action to challenge a decision by defendant United States Nuclear Regulatory Commission ("NRC") exempting Indian Point 3, a nuclear power plant operated by intervenor Entergy Nuclear Operations, Inc., from a federal fire-safety regulation. See 10 C.F.R. pt. 50, App. R. § III.G.2.c. On Brodsky's initial appeal from a grant of summary judgment to the NRC, this panel affirmed in all respects but one, see generally Brodsky v. U.S. Nuclear Regulatory Comm'n, 507 F. App'x 48 (2d Cir. 2013), remanding the case for further record development on Brodsky's claim that the agency had failed to comply with the public-participation provision of the National Environmental Protection Act ("NEPA"), see 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.4(b); see generally Brodsky v. U.S. Nuclear Regulatory Comm'n, 704 F.3d 113 (2d Cir. 2013). The NRC opted instead to reconsider its decision and solicited public comment, which it received and reviewed before deciding not to modify or rescind the challenged exemption. On appeal from the district court's renewed award of summary judgment in the agency's favor, Brodsky argues that, in reissuing the exemption, the NRC violated NEPA's public-participation requirement by refusing to consider comments regarding the environmental consequences of a terrorist attack. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

At the outset, we note that the district court, in its initial grant of summary judgment to the NRC, rejected Brodsky's argument that NEPA required consideration of public comments on possible terrorism. See Brodsky v. U.S. Nuclear Regulatory

3

Comm'n, 783 F. Supp. 2d 448, 462 n.10 (S.D.N.Y. 2011) (citing New Jersey Dep't of Envtl. Protection v. U.S. Nuclear Regulatory Comm'n, 561 F.3d 132, 136–44 (3d Cir. 2009)). Brodsky abandoned the claim, however, by failing to raise it on his initial appeal. See Van Allen v. Cuomo, 621 F.3d 244, 247 n.2 (2d Cir. 2010) (observing that issues not raised in pro se appellate brief are deemed abandoned).[1] Accordingly, the law of the case doctrine forecloses the challenge here. See Johnson v. Holder, 564 F.3d 95, 99–100 (2d Cir. 2009) (holding that "where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, it is considered waived and the law of the case doctrine bars an appellate court in a subsequent appeal from reopening such issues" absent "cogent and compelling" reasons for doing so (alteration and internal quotation marks omitted)).

In urging otherwise, Brodsky argues that because the NRC chose to reconsider the challenged exemption, it engaged in a separate, "independent" NEPA process, which raised new issues of fact ("the comments regarding terrorism") and law ("the scope of the NRC's obligation to consider those public comments") that could not have been resolved in the prior litigation. Appellant Reply 8, 9. The argument fails because the district court had ruled that the environmental effects of a possible terrorist attack fell outside the

---

[1] Although Brodsky challenged the NRC's compliance with its own requirement that exemptions from NRC regulations must be "consistent with the common defense and security," 10 C.F.R. § 50.12(a)(1), we summarily rejected his claim on the merits. See Brodsky v. U.S. Nuclear Regulatory Comm'n, 507 F. App'x at 52 ("Plaintiffs' speculation that a terrorist attack would disable more firefighting personnel than would a significant fire, thus making increased reliance on manual fire suppression unsafe, is insufficient to demonstrate that the agency's defense-and-security finding was arbitrary and capricious.").

4

scope of the agency's NEPA analysis as a matter of law. See Brodsky v. U.S. Nuclear Regulatory Comm'n, 783 F. Supp. 2d at 462 n.10. The NRC was entitled to rely on this unchallenged ruling on remand and thus—for purposes of this appeal—was not required to consider the issue even if public comments raised such concerns. See Johnson v. Holder, 564 F.3d at 99. No different result is warranted by Brodsky's effort to characterize the district court's ruling as dicta, or to limit it to the question whether NEPA compels the NRC sua sponte to consider the threat of terrorism; neither characterization has any basis in the district court's decision.

In any event, Brodsky's argument also fails on the merits because the NRC did consider the risks from terrorism in determining that its exemption decision would have no significant environmental impact. See 42 U.S.C. § 4332(2)(C); 40 C.F.R. §§ 1501.4(e), 1508.13; Department of Transp. v. Pub. Citizen, 541 U.S. 752, 757–58 (2004).[2] Responding to public comments suggesting that granting the exemption could heighten the risk that a terrorist attack would cause a severe fire preventing operation of shutdown equipment, the NRC explained that it had already analyzed "plausible threat scenarios" and, as a result, had required plant operators to undertake several protective measures "[t]o provide high assurance that a terrorist attack will not lead to significant radiological consequences." J.A. 29 (citing 10 C.F.R. §§ 50.54(hh)(1)–(2), 73.1, 73.55,

---

[2] Accordingly, we need not—and do not—address the NRC's argument that because there is no "'reasonably close causal relationship'" between granting the exemption and the probability or consequences of terrorism, the agency had no legal duty to consider the possibility of a terrorist attack in conducting its evaluation under NEPA. Appellee Br. 36 (quoting New Jersey Dep't of Envtl. Protection v. U.S. Nuclear Regulatory Comm'n, 561 F.3d at 140).

5

73.58). The agency further underscored that its "independent safety evaluation" of the facility's fire-zone configuration provided "reasonable assurance that a severe fire is not plausible" and that "existing fire protection features are adequate," whether such a fire "result[s] from a terrorist attack or some internally-initiated event." Id. (citing New York v. U.S. Nuclear Regulatory Comm'n, 589 F.3d 551, 554 n.1 (2d Cir. 2009) (concluding that NRC took sufficient account of risk from terrorism "when deciding that the risk of fire at a spent fuel pool was uniformly low" (emphasis added))). This explanation precludes a conclusion that the NRC's grant of the exemption in question was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see also Natural Res. Def. Council v. EPA, 658 F.3d 200, 215 (2d Cir. 2011) (observing that agency action is "arbitrary and capricious" if it "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise" (internal quotation marks omitted)).

Brodsky cannot urge otherwise by faulting the NRC's reliance on its independent safety evaluation on the ground that the August 27, 2007 report of its analysis does not mention the risk of a terrorist attack and could not have taken into account public comments submitted between April and June 2013. The alleged report omission is insufficient to demonstrate agency neglect in examining relevant data or in satisfactorily explaining its action, much less the lack of "a rational connection between the facts found and the choice made." Brodsky v. U.S. Nuclear Regulatory Comm'n, 704 F.3d at 119

6

(internal quotation marks omitted).   To the extent Brodsky contends that the NRC failed entirely to consider the threat of a terror attack, his contention is defeated by the agency's response to a comment that Brodsky himself submitted, in which the agency described the enhanced security requirements imposed on plant operators after the September 11, 2001 terror attacks, <u>see</u> 10 C.F.R. §§ 50.54(hh)(1)–(2), 73.1, 73.55, 73.58, and concluded that such measures had reduced the environmental risk from terrorism "to a level that reasonably assures the public health and safety."   J.A. 39–40.

Nor is there merit in Brodsky's claim that the 2007 report rests on certain assumptions—specifically, the absence of minimal combustibles and the availability of manual fire suppression—that are "unlikely to hold up" in the event of a terrorist attack. Appellant Reply 22–23.   Not only does Brodsky fail to provide a factual basis for his assertions that (1) "an attacker could easily, and would likely, introduce additional combustible material," or (2) "it is far more likely that personnel responding to the fire will be delayed or prevented from" suppressing a fire, <u>id.</u>, but also, his argument ignores that various components of the "defense-in-depth" strategy promulgated through 10 C.F.R. pt. 50, App. R. § III must be considered in conjunction rather than in isolation. <u>See</u> <u>Brodsky v. U.S. Nuclear Regulatory Comm'n</u>, 783 F. Supp. 2d at 463 n.11 (noting that "key" to "defense-in-depth" approach "is creating multiple independent and redundant layers of defense to compensate for potential human and mechanical failures so that no single layer, no matter how robust, is exclusively relied upon" (internal quotation marks omitted)); <u>see also, e.g.</u>, J.A. 48 (relying on "presence of redundant safe-shutdown trains, minimal fire hazards and combustibles, automatic cable tray fire

7

suppression system, manual fire suppression features, fire barrier protection, existing Hemyc configuration, and the installed smoke detection system").

In sum, Brodsky identifies no shortcoming in the NRC's consideration of public comments, whether regarding terrorism or otherwise, that renders arbitrary or capricious its determination that—in light of Entergy's approach to "defense-in-depth" at Indian Point 3, considered in its entirety and alongside the agency's regulatory response to "plausible" threat scenarios—granting the fire-barrier exemption would have no significant impact on the environment. See Natural Res. Def. Council v. EPA, 658 F.3d at 215 (reiterating that appellate courts do not "substitute [their] judgment for that of the agency" (internal quotation marks omitted)). Thus, even if Brodsky's sole remaining NEPA claim were not procedurally barred at this stage of the litigation, it nevertheless fails on the merits.

\* \* \* \*

We have considered Brodsky's remaining arguments and conclude that they are without merit. Accordingly, the district court's judgment is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

8