In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2013

ARGUED: OCTOBER 31, 2013
DECIDED: FEBRUARY 26, 2014

No. 13-186

RICHARD GUERTIN,
*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA, DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT,
*Defendants-Appellees.*

————

Before: WALKER, CABRANES, and LOHIER, *Circuit Judges*.

————

This appeal arises out of the refusal by the United States
Department of Housing and Urban Development to authorize
reimbursement of the defense costs of plaintiff Richard Guertin, who
in 2004 was Corporation Counsel for the City of Middletown, New

York. Guertin incurred these costs successfully defending criminal charges stemming from a series of transactions that involved Middletown's use of funds it received from HUD. Invoking the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and his Due Process and Equal Protection Rights under the United States Constitution, Guertin sought an order in the District Court for the Southern District of New York (Kenneth M. Karas, J.) overturning HUD's decision. The district court affirmed HUD's decision. We REVERSE and ORDER HUD to authorize reimbursement.

————

ROBERT N. ISSEKS, Middletown, NY, *for Plaintiff-Appellant*.

MICHAEL J. BYARS (Emily E. Daughtry, Benjamin H. Torrance *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney, United States Attorney's Office for the Southern District of New York, New York, NY, *for Defendants-Appellees*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

This appeal arises out of the refusal by the United States Department of Housing and Urban Development ("HUD") to authorize reimbursement of the defense costs of plaintiff Richard Guertin, who in 2004 was Corporation Counsel for the City of Middletown, New York. Guertin incurred these costs successfully defending criminal charges stemming from a series of transactions that involved Middletown's use of funds it received from HUD. Invoking the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (the "APA"), and his Due Process and Equal Protection Rights under the United States Constitution, Guertin sought an order in the District Court for the Southern District of New York (Kenneth M. Karas, J.) overturning HUD's decision. The district court affirmed HUD's decision. We REVERSE and ORDER HUD to authorize reimbursement.

## BACKGROUND

Between 1997 and 2004, the City of Middletown received funds under HUD's Community Development Block Grant

("CDBG") program, which provides federal grants to local governments to promote the "the development of viable urban communities." 42 U.S.C. § 5301(c). Congress delegated the day-to-day administration of the CDBG program, including the actual expenditure of federal funds, to the grant recipients. *See Dixson v. United States*, 465 U.S. 482, 486 (1984). As Corporation Counsel for the City of Middletown, Guertin had oversight responsibilities of CDBG fund expenditures.

On August 30, 2004, New York State indicted Guertin—along with Middletown Mayor Joseph DeStefano and Middletown Community Development Director Neil Novesky—on a variety of charges tied to the alleged misuse of CDBG funds. The essence of these allegations was that, as Corporation Counsel, Guertin had conspired with DeStefano and Novesky in an illegal scheme by which Mayor DeStefano had personally benefitted from the loans made from CDBG funds. Following a bench trial, plaintiff,

DeStefano and Novesky were found not guilty of all charges against them.[1]

In rendering the bench verdict, the trial judge found that Novesky simply "did his job" as Director of the Office of Economic and Community Development, and that there was "no credible evidence that he was involved in any illegal scheme." Verdict Transcript, Joint App'x 195. With regard to Mayor DeStefano, the judge found one of the eight loans from CDBG funds to be "troubling." *Id.* at 197. Although a third-party had originally sought the loan to renovate a building, the loan constituted "an indirect pecuniary benefit" to DeStefano and created a "prohibited conflict." *Id.* at 202. The judge, however, found that DeStefano had not acted with the *mens rea* mandated by New York's conflict of interest statute,[2] which requires, in addition to illegality, some evil purpose or plan.

---

[1] The court convicted DeStefano on two reduced counts that were later overturned on appeal.

[2] This statute prohibits a municipal officer or employee from "willfully and knowingly" having an interest in "any contract with the municipality of which he is an officer or employee, when such officer or employee . . .

Of relevance to this appeal, the judge found that Guertin had negotiated this prohibited transaction "ostensibly in his private capacity" as DeStefano's private lawyer. *Id.* at 198. But because there was no evidence that Guertin "was seen in contact or consult or conversation with either of his two co-defendants at any time," *id.* at 205-06, the judge found that Guertin's involvement did not amount to participation in a criminal conspiracy. The judge stated that, "like it or not, attorney Guertin did wear two hats. And in his zeal to represent his private client DeStefano, he was blinded to his obligation to the City of Middletown and he should have exercised more due care . . . . So Mr. Guertin did his job as attorney for a private citizen, DeStefano. Perhaps he didn't do his job quite as well as corporate counsel for the City of Middletown." *Id.* at 206-07.

Following his acquittal, Novesky's attorney asked HUD if federal regulations allowed Middletown to reimburse Novesky from CDBG funds for the legal fees he had incurred in defending against

---

has the power or duty to . . . negotiate, prepare, authorize or approve the contract or authorize or approve payment thereunder." N.Y. Gen. Mun. Law §§ 801, 805.

the criminal charges. HUD concluded that reimbursement of Novesky's legal fees from CDBG funds was permitted because the "proceedings resulted from actions undertaken in the ordinary course of [Novesky's] employment" and because the legal expenses were incurred pursuant to "the administration of the CDBG program." Letter from HUD Associate General Counsel to Novesky's Attorney (Sept. 7, 2007), Joint App'x 69-70.

Naturally, Guertin and Mayor DeStefano then sought HUD's approval for reimbursement of their legal fees from HUD funds, but Elton Lester, HUD's Associate General Counsel, denied their requests. Whereas Novesky's actions had been "undertaken in the ordinary course of the employee's position," in his letter denying reimbursement, Lester stated that the actions of Guertin and Mayor DeStefano that had led to their prosecution were "of a personal nature," Letter from HUD Associate General Counsel to Guertin's Attorney (Jun. 12, 2008), Joint App'x 77. In HUD's view, "legal expenses arising from a mayor's private business dealings, as well as those arising from advising the mayor on such matters, are not

required in the city's administration of the CDBG program," and, therefore, are not reimbursable. *Id*.

After unsuccessful attempts to get HUD to reconsider its decision, Guertin filed an action in the district court alleging, among other things, that HUD's decision to deny reimbursement was impermissibly arbitrary and violated the Due Process and Equal Protection Clauses of the Fifth Amendment. The parties cross-moved for summary judgment and, based on the undisputed administrative record, the district court granted the government's motion, and denied Guertin's. *See Guertin v. United States*, 913 F. Supp. 2d 1 (S.D.N.Y. 2012).

This appeal followed.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*. *Natural Res. Defense Council, Inc. v. U.S. Food and Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). "In considering the evidence, the court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment even if contrary inferences might reasonably be drawn." *Natural Res. Defense Council*, 710 F.3d at 79 (internal quotation marks and citation omitted).

The APA limits judicial review of agency action. As relevant to this dispute, the APA provides that a reviewing court shall only "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "Under this deferential standard of review, we must assess, among other matters, whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 446 (2d Cir. 2013) (internal quotation marks omitted). In doing so, we "may not substitute [our] judgment for that of the agency"; however the "record must show that the agency examined the relevant data and

articulated a satisfactory explanation for its action." *Natural Res. Defense Council, Inc. v. U.S. Envtl. Prot. Agency*, 658 F.3d 200, 215 (2d Cir. 2011) (citations and internal quotation marks omitted). An agency decision will thus only be set aside if it "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Bechtel*, 710 F.3d at 446 (quoting *Nat'l Assoc. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007)).

As relevant here, the CDBG program was created by statute in 1974 as part of an effort to promote the "development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income." 42 U.S.C. § 5301(c). The municipal grantee of CDBG funds is largely in control of disbursement. While this control is extensive, it is not unlimited.

The statute provides that permissible expenditures include the "payment of reasonable administrative costs related to establishing and administering federally approved enterprise zones and payment of reasonable administrative costs and carrying charges related to . . . the planning and execution of community development and housing activities." *Id*. § 5305(13).

HUD's regulations are more specific. *See* 24 C.F.R. §§ 570.200-570.206. HUD's criteria include that any costs incurred must conform to the Office of Management and Budget's Circular A-87, "Cost Principles for State, Local, and Indian Tribal Governments," revised May 10, 2004 ("OMB Circular A-87"). 24 C.F.R. § 570.200(a)(5). OMB Circular A-87 states, under the heading "[d]efense and prosecution of criminal and civil proceedings, and claims," that "[l]egal expenses required in the administration of [f]ederal programs are allowable. Legal expenses for prosecution of claims against the [f]ederal [g]overnment are unallowable." OMB Circular No. A87, attach. B, § 10(b). In disallowing Guertin's reimbursement, Associate General Counsel Lester explicitly relied

11

on OMB Circular A-87. Lester's letter denying reimbursement stated:

> Along similar lines, the court documents described Mr. Guertin's questioned activities as being undertaken for the mayor's personal benefit as opposed to providing legal services to carry out the city's CDBG program. The court presiding over the case stated "attorney Guertin did wear two hats. And in his zeal to represent his private client DeStefano, he was blinded to his obligation to the City of Middletown. So, Mr. Guertin did his job as attorney for a private citizen, DeStefano." In our view, legal expenses arising from a mayor's private business dealings, as well as those arising from advising the mayor on such matters, are not required in the city's administration of the CDBG program.

Joint App'x 77.

Guertin argues that HUD acted arbitrarily and capriciously because Lester's denial letter was based upon a premise that is "plainly false." Guertin contends that his legal expenses did not arise out of advising DeStefano on DeStefano's private business dealings, of which there was no evidence, but rather from the unproven allegations that Guertin had compromised his duties and obligations as Corporation Counsel in administering Middletown's CDBG program. We agree.

12

Based on the record before us, we hold that HUD acted arbitrarily and capriciously by incorrectly determining that Guertin's legal fees were a result of Guertin's acting solely as DeStefano's private counsel. Lester, referring to the state trial court's findings, stated that "the court documents described Mr. Guertin's questioned activities as being undertaken for the mayor's personal benefit *as opposed to* providing legal services to carry out the city's CDBG program." *Id*. (emphasis added). This is the factual finding relied on by Lester in explaining HUD's denial; however, it is not supported by either the allegations against Guertin in the indictment or the state trial court's verdict.

As an initial matter, Guertin was named in eight counts of the indictment. Six of those counts contain no claim of private dealing: they allege that the basis for criminal liability lies solely in Guertin's public role as Corporation Counsel. For example, count one charged that Guertin, being a public servant, schemed with intent to defraud the government, and counts thirty-eight and forty-one charged Guertin with official misconduct. The two counts that do not

explicitly charge Guertin in his role as Corporation Counsel (count thirty-seven and forty) both allege a prohibited conflict of interest based on Guertin acting in concert with DeStefano.  The indictment thus does not support HUD's finding that Guertin's "questioned activities" were undertaken *only* in support of DeStefano's personal business deals "as opposed to providing legal services to carry out the city's CDBG program."

More importantly, the state trial court's verdict, on which Lester purported to rely, does not support Lester's findings.  The passage from the trial court quoted by Lester's letter states "attorney Guertin did wear two hats . . . So, Mr. Guertin did his job as attorney for a private citizen, DeStefano."  This statement, however, referred to only one of the seven loans underlying the charges against Guertin and DeStefano, which dealt with a piece of property at 5-11 North Main Street.  In every other loan transaction at issue, there is no support for the proposition that Guertin acted with any purpose other than administering the CDBG program.  And in the loan transaction in which the trial judge perceived a conflict, the trial

14

court made no finding that Guertin had not fulfilled his responsibilities as Corporation Counsel. To the contrary, the trial court expressly found that every single loan was "properly considered" and "properly granted."

Lester's statement that the evidence showed that Guertin acted "for the mayor's personal benefit as opposed to providing legal services" to the City thus is not supported by the evidence that Lester purported to rely on. HUD therefore "offered an explanation for its decision that runs counter to the evidence before the agency." *Bechtel*, 710 F.3d at 446.

Not only was HUD's explanation contrary to the evidence, but the district court's analysis of HUD's factfinding was similarly flawed. The district court found that "HUD's factfinding methodology was sound" because it "relied on the verdict transcript to determine the nature of the criminal action, which was an eminently reasonable place to look to find the necessary facts." *Guertin*, 913 F. Supp. 2d at 14. The district court further stated that "[o]ne perhaps could debate HUD's interpretation of the facts

15

underlying the verdict, but the only role for this Court is [to] make sure that HUD meets the requirement that the agency 'examine the relevant data and articulate a satisfactory explanation for its action.'" *Id.* (quoting *Motor Vehicle Mfrs Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

HUD, however, had an obligation to do more. As indicated above, HUD may not rely on an explanation that runs counter to the relevant evidence presented to the agency, including the indictment, nor could HUD ignore relevant evidence in the verdict by relying solely on portions favorable to its own position. *State Farm*, on which the district court relied, states as much. *See Islander E. Pipeline Co., v. McCarthy*, 525 F.3d 141, 151 (2d Cir. 2008) (describing *State Farm* as requiring an examination of "*all relevant data*" (emphasis added)). By articulating an explanation unsupported by the relevant facts, HUD thus acted arbitrarily and capriciously in disallowing

Middletown from reimbursing Guertin's legal fees from CDBG funds, and the district court erred in not so finding.[3]

In the usual case, when an agency violates its obligations under the APA, we will vacate a judgment and remand to the agency to conduct further proceedings. *See, e.g., Ward v. Brown*, 22 F.3d 516, 522 (2d Cir. 1994) (in holding that an agency acted arbitrarily or capriciously, "the appropriate course for a reviewing court ordinarily is to remand the case to the agency"). This rule, however, is not absolute. If an agency is found to have acted arbitrarily or capriciously, "the proper course, *except in rare circumstances*, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (emphasis added). Thus, there are occasions in which remand to the agency for further review is not appropriate. *See, e.g., Middle*

---

[3] We recognize that this case presents an unusual set of facts in which, among other things, the significant majority of Guertin's "questioned activities" were undisputedly undertaken to carry out the City's CDBG program and were thus clearly reimbursable. We express no view regarding whether, under different facts in which a significant proportion of the conduct at issue was *not* undertaken to carry out the relevant federal program and HUD's position was consistent with the record, HUD could decline reimbursement of some or all of the claimant's legal fees.

*Rio Grande Conservancy Dist. v. Norton*, 294 F.3d 1220, 1226 (10th Cir. 2002) (holding that remanding to the agency was not appropriate because, among other reasons, "the record contains overwhelming evidence" that the agency must prepare an environmental impact statement).

This is one of the unusual circumstances where remand to the agency for further proceedings is not necessary because there is compelling evidence in the record—a record that would not change if remanded to the agency—that Guertin is entitled to be reimbursed for his legal fees from Middletown's CDBG funds. As noted earlier, the OMB Circular states, under a heading "[d]efense and prosecution of criminal and civil proceedings, and claims," that "[l]egal expenses required in the administration of [f]ederal programs are allowable." In his letter approving reimbursement of Novesky's legal fees, Lester stated that Middletown may "use CDBG funds to pay reasonable legal expenses incurred in defense of lawsuits resulting from its administration of the CDBG program as long as the grantee has acted with due diligence in the

18

administration of the program." Joint App'x 69. Further, Lester noted that Novesky was entitled to reimbursement because "the proceedings resulted from actions undertaken in the ordinary course of [his] employment and the court acquitted him of all charges after a trial on the merits."

The same is true of Guertin. In six of the seven loans underlying the charges against Guertin, the trial judge found no misconduct of any kind. And in the seventh loan, while Guertin was found to have worn "two hats," the criminal charges were dismissed, Guertin fulfilled his role as Corporation Counsel and, as with the other transactions, this one was expressly found to have been "properly considered" and "properly granted."

Accordingly, we hold that the legal fees and expenses incurred by Guertin in successfully defending the criminal charges are "[l]egal expenses required in the administration of [f]ederal programs" under the OMB Circular.

## CONCLUSION

For the reasons stated above, we **REVERSE** the December 21, 2012 judgment of the district court, and **ORDER** the United States Department of Housing and Urban Development to authorize Middletown to reimburse the criminal defense costs of plaintiff Richard Guertin from CDBG funds.