**19-3133**
*Alzokari v. Pompeo*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

―――――――

August Term 2019

(Argued: April 24, 2020 | Decided: August 26, 2020)

Docket No. 19-3133

AHMED ALI ALZOKARI,

*Plaintiff-Appellant*,

v.

MICHAEL POMPEO, CARL C. RISCH, RACHEL ARNDT, UNITED STATES
DEPARTMENT OF STATE

*Defendants-Appellees.*†

―――――――

Before:
CALABRESI, WESLEY, BIANCO, *Circuit Judges*.


Plaintiff-Appellant Ahmed Ali Alzokari appeals the dismissal of his
Administrative Procedure Act ("APA") action challenging the United States
Department of State's (the "Department") revocation of his passport. Alzokari
was born in Yemen and naturalized as a United States citizen in 1979 under the
name "Ahmed Ali Alzokari." Since 1979, he has used that name in each of his
United States passport applications.

―――――――――――――――

† The Clerk of Court is directed to amend the caption as set forth above. Under Federal
Rule of Appellate Procedure 43(c)(2), Deputy Assistant Secretary Rachel Arndt is
substituted for former Deputy Assistant Secretary Brenda Sprague.

In 2013, Alzokari visited the United States embassy in Sana'a, Yemen, to obtain a consular report of birth abroad for a child he claimed to be his son. Suspecting fraud, embassy officials detained Alzokari for several hours. Following an interrogation, Alzokari signed a statement declaring, *inter alia*, that his true name was not "Ahmed Ali Alzokari." Based only on that statement, the Department revoked Alzokari's passport, concluding it was fraudulently obtained.

Alzokari requested an administrative hearing to challenge the Department's decision. The Deputy Assistant Secretary for Passport Services upheld the passport revocation and Alzokari subsequently commenced this action, arguing that his passport revocation violated the APA and his Fifth Amendment Due Process rights. The United States District Court for the Eastern District of New York (Cogan, *J.*) dismissed Alzokari's complaint, determining that the revocation of Alzokari's passport was neither arbitrary nor capricious, and did not violate Due Process.

Because we find that Alzokari could not have fraudulently obtained his passport by using the name and birthdate listed on his certificate of naturalization in his application, we **REVERSE** the district court's decision, **REVERSE** the Department's final decision upholding the passport revocation, and **ORDER** the Department to return Alzokari's expired passport so that he may apply for a new United States passport if he so chooses.

————————————

JAN H. BROWN, Law Offices of Jan H. Brown, P.C., New York, NY, *for Plaintiff-Appellant*.

JOSEPH A. MARUTOLLO, Assistant United States Attorney (Varuni Nelson, Assistant United States Attorney, *on the brief*), *for* Seth D. DuCharme, Acting United States Attorney for the Eastern District of New York, New York, NY, *for Defendants-Appellees*.

————————————

WESLEY, *Circuit Judge*:

Plaintiff-Appellant Ahmed Ali Alzokari challenges the United States Department of State's (the "Department") revocation of his passport. Alzokari was born in Yemen and naturalized as a United States citizen in 1979 under the name "Ahmed Ali Alzokari." Since 1979, he has used that name in each of his United States passport applications.

During a 2013 visit to the United States embassy in Sana'a, Yemen, to obtain a consular report of birth abroad for a child he claimed to be his son, embassy officials detained Alzokari on suspicions of fraud. Several hours later, Alzokari signed a statement declaring, *inter alia*, that his true name is "Ahmed Ahmed Mohamed Albaadani." Based on that statement alone, the Department revoked Alzokari's passport, concluding it was fraudulently obtained.

Alzokari challenged the revocation in an administrative hearing, but the Deputy Assistant Secretary for Passport Services upheld the decision. He then commenced this action in the United States District Court for the Eastern District of New York (Cogan, *J.*), arguing that the Department's revocation violated the Administrative Procedure Act ("APA") and his Fifth Amendment Due Process rights. The district court disagreed and dismissed Alzokari's complaint.

3

This case presents a question of first impression for this Court: can the Department revoke a citizen's United States passport on the ground that he concealed his identity in applying for the passport, where the citizen makes a statement that prior to his naturalization he was known by another name but he applied for, and was issued, his passport using his *uncontested* legal name? We hold that it cannot. Because Alzokari cannot be said to have fraudulently obtained his passport when he used the name and birthdate denoted on his *unchallenged* immigration and citizenship documents, including his certificate of naturalization, we reverse the district court's decision, reverse the Department's decision to uphold the passport revocation, and order the Department to return Alzokari's passport so that he may reapply for a United States passport if he so chooses.

## BACKGROUND

### I. Facts[1]

#### A. Alzokari Immigrates to the United States

Alzokari was born in Yemen on March 1, 1955. In 1972, Alzokari's father, Ali Ayed Zoqari ("Ali"), filed a "Petition to Classify Status of Alien Relative for

---

[1] We review *de novo* a grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Coal. for Competitive Elec., Dynergy Inc. v. Zibelman*, 906 F.3d 41, 48–49 (2d Cir. 2018), and "constru[e] the complaint liberally, accepting all factual allegations in the

Issuance of Immigrant Visa" with what was then the United States Immigration and Naturalization Services. The petition identified Alzokari as Ali's son, but spelled Alzokari's name as "Ahmed Ali Zoqari." C.A.R. 402.[2] At the time of the petition, Alzokari's father was a permanent resident of the United States working for Chrysler.

In 1973, Alzokari applied for an immigrant visa under the name "Ahmed Ali Ayedh Alzokari." C.A.R. 414. His visa application was supported by a Yemeni birth certificate, a police certificate, an affidavit, medical records, and photographs. In addition, the Yemen Ministry of Justice certified that "Ahmed Ali Aith Al Zokari" was born on March 1, 1955 to "Ali Aith Al Zokari" and "Salehah Bint Saleh Ahmed." Alzokari App. 68.

On October 24, 1973, the United States issued Alzokari an immigrant visa in the name "Ahmed Ali Ayedh Al-Zokari." C.A.R. 408. The Yemeni passport supporting Alzokari's visa was issued to "Ahmed Ali Aid," *id.*, and a translated

---

complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

[2] Citations to "C.A.R." refer to the "certified administrative record" filed by Defendants-Appellees in the district court.

certificate of characters accompanying the passport identified Alzokari as "Ahmed

Ali Aiad," Alzokari App. 65.

### B. Alzokari's United States Citizenship

In 1979, Alzokari naturalized as a United States citizen. Alzokari petitioned

for naturalization in the name "Ahmed Ali Alzokari," C.A.R. 385, and the United

States issued his certificate of naturalization in the name "Ahmed Ali Alzokari,"

listing his birthdate as March 1, 1955,[3] Alzokari App. 58. Since arriving in this

country, none of Alzokari's immigration and naturalization records have been

challenged for any reason, including his Yemeni birth certificate and his parents'

marriage certificate. There have been no allegations that Alzokari changed his

name to hide a criminal record or for any reason that might preclude

naturalization. Following Alzokari's naturalization, the United States has issued

him other documents under the name "Ahmed Ali Alzokari," including his Social

Security card.

---

[3] The Yemeni birth certificate Alzokari's father provided for immigration purposes also stated that he was born on March 1, 1955, and that his name was "Ahmed Ali Ayed Zoqari." Alzokari App. 61.

### C. Alzokari's United States Passports

Alzokari applied for his first United States passport in 1979. He used the name and birthdate listed on his certificate of naturalization and presented the certificate as an identifying document. He listed his father as "Ali Ayied Alzokari" and his mother as "Salehih Ahmed." C.A.R. 160. When Alzokari applied for passports in 1995 and 2005, he used the same name and birthdate, and presented his previously issued passports as evidence of his identity. The Department issued a passport to Alzokari in each instance.

### D. Alzokari's Detainment at the United States Embassy in Sana'a, Yemen, and His Passport Revocation

On March 26, 2013, Alzokari traveled to the United States embassy in Sana'a, Yemen, to secure a consular report of birth abroad for his "son," Dawood Ahmed Ali Alzokari ("Dawood").[4] The consular official interviewing Alzokari became suspicious of Alzokari's relationship to Dawood given their significant age difference and initiated a fraud investigation. The consular official referred the matter to Special Agent David W. Howell, then Assistant Regional Security Officer

---

[4] A consular report of birth abroad documents the birth of a United States citizen born abroad, serving as an official determination of the applicant's United States citizenship. 22 U.S.C. § 2705(2). It "may only be issued by a consular officer," who will "issue the report if satisfied that the claim to nationality has been established." 22 C.F.R. § 50.2.

for Investigations at the United States embassy in Sana'a, Yemen, and embassy officials confiscated Alzokari's expired and unexpired passports, as well as his certificate of citizenship.

Special Agent Howell detained Alzokari and interviewed him for several hours, assisted by United States Department of State Consular Fraud Investigator, Mohammed, a native Arabic speaker.[5] Following the interrogation, Alzokari signed a statement—which he claims he did not understand—stating, among other things, that he was born "on/about 1948," his "true and correct name" is "Ahmed Ahmed Mohamed Albaadani," he was "smuggled" into the United States "on/about 1973" by Ali Ayad Alzokari (who falsely claimed him as his child), and he naturalized "on/about 1979" under the "assumed/fraudulent name" Ahmed Ali Alzokari. Alzokari App. 36. The statement further claimed that Dawood was Alzokari's grandson—not his son—and that Alzokari had previously smuggled four other people into the United States under claims that they were his children. *Id.* at 36–37.[6]

---

[5] Mohammed's last name has been withheld for security purposes.

[6] We note that Special Agent Howell has obtained strikingly similar statements to the one at issue here during his tenure at the United States embassy in Sana'a, Yemen. *See, e.g.,*

8

After Alzokari signed the statement—as "Ahmed Ali Alzokari," *id.* at 36–38—embassy officials returned Alzokari's passports and his certificate of citizenship.[7] On his return to the United States, however, these documents were again confiscated by airport officials at John F. Kennedy International Airport, and

---

*Omar v. Kerry ("Omar I")*, No. 15-cv-01760, 2016 WL 617449 (N.D. Cal. Feb. 16, 2016); *Omar v. Tillerson ("Omar II")*, No. 15-cv-01760, 2017 WL 5751314 (N.D. Cal. Nov. 28, 2017). In *Omar*, plaintiff Mosed Shaye Omar was born in Yemen in 1951, immigrated to the United States in 1972, and became a United States naturalized citizen in 1978. *Omar I*, 2016 WL 617449, at *1. In 2012, Omar traveled to Yemen to obtain a U.S. passport for his daughter. *Id.* After attending an interview at the United States embassy in Sana'a, Omar remained in Yemen for several months, waiting to hear from the embassy regarding his daughter's application. *Id.* Just before he was to return to the United States, Omar visited the embassy at the request of embassy officials, who took his passport on arrival. *Id.* Special Agent Howell interviewed Omar in an interrogation room for several hours, and Omar eventually signed a statement similar to the one Alzokari signed. *Id.* at *2. For example, the statement Omar signed claimed that Omar was an "assumed/fraudulent name" that Omar used when he naturalized, that he was "smuggled to the US by a distant 'uncle,'" and that he smuggled others into the United States by falsely claiming they were his children. *See* Voluntary Statement, *Omar I*, No. 15-cv-1760, (N.D. Cal. June 24, 2015), ECF No. 14-5. Because of the statement, the Department revoked Omar's passport, claiming that he applied for it under a false name. *Omar I*, 2016 WL 617449, at *2. The district court reversed that revocation as arbitrary and capricious and enjoined the Department "from revoking or denying Mr. Omar's passport on this same basis." *Omar II*, 2017 WL 5751314, at *7. However, the district court later vacated its judgment on the stipulation of the parties, who agreed in mediation in the Ninth Circuit to settle the action if the Department issued a new passport to Omar and the district court vacated its judgment. *Omar v. Pompeo ("Omar III")*, No. 15-cv-1760, 2018 WL 4191416 (N.D. Cal. Aug. 16, 2018); Joint Mot. To Vacate J., *Omar I*, No. 15-cv-1760 (N.D. Cal. Aug. 13, 2018), ECF No. 105.

[7] The Department subsequently denied Dawood's consular report of birth abroad application, claiming that Alzokari had not presented sufficient evidence of a paternal relationship with Dawood, and citing his March 2013 statement. *See* Alzokari App. 77–78.

the Department formally revoked Alzokari's passport on January 6, 2015. In its revocation letter, the Department determined that Alzokari made a false statement of material fact in his passport application because his March 2013 statement "revealed that [he is] not Ahmed Ali Alzokari, born on March 1, 1955 to U.S. citizen Ali Ayad Alzokari[,]" but is "Ahmed Ahmed Mohamed Albaadani, born in or about 1948 to Ahmed Mohamed Ali Albaadani and Maydam Al-Radhaie." C.A.R. 2. The revocation letter did not refer to any other admissions from the March 2013 statement. The letter made no assertion that Alzokari had obtained his naturalization through fraud or deception nor did it contend that Alzokari's attempt to obtain admission into the United States for his grandson presented a national security concern.

## II. Procedural History

Alzokari challenged his passport revocation and received an administrative hearing on April 19, 2018.[8] At the hearing, Alzokari argued, *inter alia*, that he did

---

[8] An earlier hearing in May 2015 upheld the revocation. Alzokari subsequently challenged the agency decision in the United States District Court for the Eastern District of New York (Gershon, *J.*). *See Alzokari v. Tillerson, et al.*, No. 1:17-cv-00830 (E.D.N.Y. Feb. 14, 2017). The district court entered a stipulated order of dismissal, dismissing the action without prejudice and remanding for a *de novo* administrative hearing on a new administrative record. *See* Stipulation and Order of Dismissal Without Prejudice, *Alzokari*

10

not understand the March 2013 statement, that he had signed it under duress while suffering from dementia, and that the Arabic-speaking interpreter was biased—all of which made the statement unreliable—and that the Department had not presented independent evidence that his passport had been issued based on fraud. The Department countered that Alzokari failed to rebut the admissions in the March 2013 statement, and therefore, revocation was appropriate. Alzokari's immigration and naturalization records were before the agency at the time it made the revocation decision.

The hearing officer found that Alzokari failed to meet his burden in showing that the Department acted improperly. He recommended upholding the revocation because the March 2013 statement "was sufficient evidence for the Department to reasonably rely upon when revoking [Alzokari's] passport." Alzokari App. 53. He made this recommendation despite acknowledging that Alzokari "present[ed] . . . identity and citizenship documents," including his certificate of naturalization, "all in the name Ahmed Ali Alzokari, bearing a date of birth of March 1, 1955," when he applied for his United States passports. *Id.* at

_____

*v. Tillerson, et al.*, No. 1:17-cv-00830 (E.D.N.Y. Oct. 16, 2017), ECF No. 13. We review the results of that administrative hearing here.

11

49. The Deputy Assistant Secretary for Passport Services approved the hearing officer's recommendation.

In January 2019, Alzokari commenced this action in the United States District Court for the Eastern District of New York (Cogan, *J.*) against Defendants.[9] In his complaint, Alzokari claims that (1) Defendants violated the APA when they revoked his passport, *id.* at 19–23, and (2) the passport revocation violated his Fifth Amendment Due Process rights because "the Government should have had the burden of persuading the hearing officer that it was proper to revoke [his] passport," *id.* at 200. Defendants moved to dismiss Alzokari's complaint under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment. Alzokari cross-moved for summary judgment.

The district court granted Defendants' motion to dismiss. As to Alzokari's APA claim, the court determined that the decision to revoke Alzokari's passport was neither arbitrary nor capricious because it was supported by the March 2013 statement. *Alzokari v. Pompeo*, 394 F. Supp. 3d 250, 255 (E.D.N.Y. 2019). As to

---

[9] We refer collectively to the Department, Secretary of State Michael Pompeo, Assistant Secretary for Consular Affairs Carl C. Risch, and Deputy Assistant Secretary for Passport Services Rachel Arndt as "Defendants."

12

Alzokari's Due Process argument, the district court concluded that allocating the burden of persuasion to Alzokari did not violate his Due Process rights. *Id.* at 258.

First, the district court found that although Alzokari's interest in his passport was "a liberty interest protected by the Due Process Clause of the Fifth Amendment," it was "not a fundamental right equivalent to the right to interstate travel," nor did it affect his citizenship. *Id.* at 258 (quoting *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir. 2001)). Next, the court concluded that the Department had a strong interest in preventing fraud in connection with passports. *Id.* Although the revocation letter made no mention of Alzokari's purported smuggling of children into the United States, the district court determined that the Department's interest was "particularly acute here" because of that admission, emphasizing that the "likelihood of damage to national security or foreign policy of the United States" is "the single most important criterion in passport decisions." *Id.* (quoting *Haig v. Agee*, 453 U.S. 280, 298 (1981)). Finally, the court determined that the risk of an erroneous deprivation of Alzokari's passport was low because Alzokari "participated in two separate hearings; had the opportunity to present evidence and make arguments; was represented by counsel; and received decisions that [Alzokari] concedes were 'comprehensive' and 'discussed all the

13

relevant facts.'" *Id.* at 259. Thus, the district court found the allocation of the burden of proof complied with Due Process.

The district court entered judgment and Alzokari timely appealed.

## DISCUSSION

### I. The Department's Passport Revocation Violated the APA

Under the APA, we may set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Natural Res. Def. Council, Inc. v. U.S. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Department revoked Alzokari's passport pursuant to 22 C.F.R. § 51.62(a)(2), which provides that the Department may revoke or limit a passport when it was "illegally, fraudulently or erroneously obtained from the Department; or was created through illegality or fraud practiced upon the Department." *See*

*also* 8 U.S.C. § 1504(a) ("The Secretary of State is authorized to cancel any United States passport . . . if it appears that such document was illegally, fraudulently, or erroneously obtained from, or was created through illegality or fraud practiced upon, the Secretary."). When a citizen applies for a United States passport, they "must truthfully answer all questions and must state every material matter of fact pertaining to his or her eligibility for a passport." 22 C.F.R. § 51.20(b).

The Department premised its revocation decision on the contention that Alzokari "made a false statement of material fact in [his] passport application" by representing that he is Ahmed Ali Alzokari when his "true identity" is actually Ahmed Ahmed Mohamed Albadaani. C.A.R. 2. The question we must answer, therefore, is whether the revocation of Alzokari's United States passport was arbitrary, capricious, or otherwise not in accordance with law, where the record shows that Alzokari applied for his passport using the legal name and birthdate denoted on his uncontested immigration documents, including his certificate of naturalization. In our view, the revocation decision was indeed arbitrary.

Alzokari's certificate of naturalization lists his name as Ahmed Ali Alzokari. The name used for passports is generally "the name recorded in the evidence of nationality and identity." 22 C.F.R. § 51.25(a). Where, as here, the applicant is

15

born outside of the United States, "evidence of nationality" includes a certificate of naturalization. *See* 22 C.F.R. § 51.43(b)(1)(i). Moreover, a certificate of naturalization is "evidence of identity" that may be used to obtain a passport because it is a "federal government officially issued identification with photograph." 22 C.F.R. § 51.23(b).

Even a cursory review of Alzokari's first United States passport application shows that certificates of naturalization are specifically listed as acceptable "[i]dentifying [d]ocument(s)."[10] C.A.R. 161. This makes sense since the certificate must be issued to the applicant "in his or her true, full, and correct name *as it exists at the time* of the administration of the oath of allegiance." 8 C.F.R. § 338.1(b) (emphasis added). Moreover, the regulations governing passport applications specifically contemplate—and permit—that an applicant may undergo a name change prior to naturalization, provided the new name is reflected on the certificate of naturalization. *See, e.g.*, 22 C.F.R. § 51.25(c)(2) ("A name change will be recognized for purposes of issuing a passport if the name change occurs in . . .

---

[10] As discussed, Alzokari used his certificate of naturalization as his "identifying document" for his first passport application in 1979. *See* C.A.R 161. He used his previously issued passports for his 1995 and 2005 passport applications. *See* C.A.R. 157–59. A previously issued passport is also an acceptable identifying document under the regulations. *See* 22 C.F.R. § 51.23(b).

16

[a] Certificate of naturalization issued in a new name."). Thus, even accepting as true the March 2013 admissions regarding Alzokari's identity—and ignoring the dubious circumstances surrounding his "statement"[11] —Alzokari was authorized to use the name denoted in his citizenship papers when applying for a passport even if he had been known by another name before he became a citizen of the United States. Ahmed Ali Alzokari became his name at the time of his 1979 naturalization. *See* 8 U.S.C. § 1449 (detailing contents of a certificate of naturalization); 8 C.F.R. § 338.1(b) (same); *see also* 8 U.S.C. § 1447 ("It shall be lawful at the time and as a part of the administration by a court of the oath of allegiance . . . for the court . . . to make a decree changing the name of said person, and the certificate of naturalization shall be issued in accordance therewith."). The fact that Alzokari may have used a different name prior to becoming a United States citizen did not establish fraud *per se*.[12]

---

[11] Again, this is not the first time that Special Agent Howell and Mohammed have obtained very similar statements from visitors to the United States Embassy in Sana'a, Yemen. *See, e.g., Omar I*, 2016 WL 617449, at *2; *Omar II*, 2017 WL 5751314, at *3; *Awad v. U.S. Dep't of State*, No. 19 C 10, 2020 WL 1182743, at *1 (N.D. Ill. Mar. 12, 2020); *Awad v. Kerry*, 257 F. Supp. 1016, 1018–19 (N.D. Ill. 2016). It is also not lost on us that Alzokari signed a statement claiming his name was "Ahmed Ahmed Mohamed Albaadani" as "Ahmed Ali Alzokari."

[12] Frankly, it would make Alzokari no different from many Americans who changed their names when they immigrated to the United States.

17

If the Department suspects that a citizen's certificate of naturalization was fraudulently obtained, it can institute denaturalization proceedings. *See, e.g.*, 8 U.S.C. § 1451 (outlining civil denaturalization proceedings); *Fedorenko v. United States*, 449 U.S. 490, 506 (1981) ("[O]ur cases have . . . recognized that there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship. Failure to comply with any of these conditions renders the certificate of citizenship illegally procured, and naturalization that is unlawfully procured can be set aside." (internal quotation marks and citations omitted)). What the Department cannot do is circumvent these proceedings by revoking a citizen's passport.[13]

Indeed, the Department's Foreign Affairs Manual specifically recognizes that "Certificates of Naturalization are proof of United States citizenship," and that the Department is "bound by law to accept them as proof of citizenship and *cannot look behind the certificate*." 8 FAM § 301.8-3(d) (2018) (emphasis added); *see also* 8

---

[13] The government bears a significantly greater burden in revoking citizenship. *See Schneiderman v. United States*, 320 U.S. 118, 122 (1943) ("[O]nce conferred[,] [United States citizenship] should not be taken away without the clearest sort of justification and proof."). In order to revoke an individual's citizenship in a civil denaturalization proceeding, the government "must prove its case by clear, unequivocal, and convincing evidence which does not leave the issue in doubt." *United States v. Sprogis*, 763 F.2d 115, 121 (2d Cir. 1985).

18

U.S.C. § 1443(e). Moreover, even if the "passport agency believes that a certificate of naturalization was issued fraudulently, *the person remains eligible for a U.S. passport until the naturalization certificate is revoked*." 8 FAM § 301.8-3(e)(4) (2018) (emphasis added).

Had Alzokari applied for a passport with a different name, he would be in danger of violating the regulations. *See, e.g.*, 22 C.F.R. §§ 51.25(a), (b) (an applicant is required to "explain any material discrepancies between the name on the application and the name recorded in the evidence of nationality and identity"). Indeed, we are left wondering what name the Department would have wanted Alzokari to use in his passport application. If the Department maintains that Alzokari's "true identity" is "Ahmed Ahmed Mohamed Albaadani," as the March 2013 statement suggests, then it would presumably have him use that name in his passport application. Yet we are aware of no government-issued documents that would allow Alzokari to apply for a passport in that name, as required by the regulations. If, on the other hand, the Department believes that the March 2013 statement shows that Alzokari defrauded the United States during his naturalization, then we again emphasize that it is free to commence denaturalization proceedings.

19

At bottom, the Department failed to consider the significance of Alzokari's immigration and nationalization records in accordance with the law. Its premise for revoking Alzokari's passport offers no support for the conclusion that Alzokari obtained his passport fraudulently and is contrary to the Department's own regulations and guidance. If the Department's revocation were to stand, Alzokari would be left in an untenable position: His claim of citizenship is unquestioned and yet he is forbidden from leaving the country for using the name he carries as a U.S. citizen. If the Department believes Alzokari's "true identity" is Ahmed Ahmed Mohamed Albaadani *and* that his citizenship was fraudulently procured (it is not enough that Alzokari was known by another name prior to his naturalization), the proper remedy would be to revoke his citizenship. Until then, Alzokari can use his legal name to obtain a passport.

The Department's passport revocation was arbitrary, capricious, and not in accordance with law. *See Islander E. Pipeline Co. v. McCarthy*, 525 F.3d 141, 150–51 (2d Cir. 2008). Reversal of the district court's decision is therefore required.

**II. Remand to the Agency is Unnecessary**

Finally, because we determine, as a matter of law, that a citizen does not commit passport fraud by applying for a passport under the name and birthdate

20

appearing on his uncontested citizenship and identity documents, there is no basis for remand to the agency. *See Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 100 n.10 (2d Cir. 2005); *Karimi v. Holder*, 715 F.3d 561, 565 (4th Cir. 2013); *see also Guertin v. United States*, 743 F.3d 382, 388–89 (2d Cir. 2014) (declining to remand to the agency because "there is compelling evidence in the record—a record that would not change if remanded to the agency," that plaintiff is entitled to the relief sought).[14]

## CONCLUSION

For the reasons stated above, we **REVERSE** the judgment of the district court, **REVERSE** the Department's decision to uphold the revocation of Alzokari's passport, and **ORDER** the Department to return Alzokari's expired passport so that he may apply for a new United States passport if he so chooses.

---

[14] Finally, we note that Alzokari also made various arguments regarding the constitutionality of the post-revocation proceedings, including the allocation of the burden of proof. The district court's reliance on 22 C.F.R. § 51.71(h) for the burden of proof raises a number of unresolved issues, including whether passport revocation hearings qualified as "formal" adjudication proceedings under the APA at the time of Alzokari's relevant passport revocation hearing, *see* 5 U.S.C. §§ 554 *et. seq.*, and whether the court's reliance on that section constituted an impermissible retroactive application because § 51.71(h) was not in effect at the time of Alzokari's hearing. These issues remain open; we need not address them because no matter who bore the burden of proof, the basis for the Department's revocation was improper as a matter of law.