20-1512-cv
Kakar v. USCIS

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2021

(Argued: September 3, 2021      Decided: March 28, 2022)

Docket No. 20-1512-cv

_____

MOHAMED QASEEM KAKAR,

*Plaintiff-Appellant*,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

*Defendant-Appellee*.

_____

Before:

WALKER, CALABRESI, and LOHIER, *Circuit Judges*.

Over twenty years ago, an Immigration Judge granted Mohamed Qaseem Kakar, an Afghan national, asylum in the United States. When Kakar later applied for lawful permanent residence, the United States Citizenship and Immigration Services (USCIS) denied his application because it found that he had engaged in terrorist activity that rendered him inadmissible. Kakar challenged USCIS's denial as arbitrary and capricious under the Administrative Procedure Act (APA). On review, the United States District Court for the Eastern District of New York affirmed the denial under the "weapons bar" of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(3)(B)(iii)(V). The question on appeal is whether USCIS, in denying Kakar's application, adequately explained the

unlawfulness of Kakar's acts under United States law, and whether in doing so it considered his claim of duress. Because we are unable to discern USCIS's full reasoning for denying Kakar's application or to conclude that the agency considered all factors relevant to its decision, we conclude that its decision was arbitrary and capricious under the APA. We therefore **VACATE** the judgment and **REMAND** the case to the District Court with instructions to remand to USCIS for further proceedings consistent with this opinion.

MICHAEL E. PISTON, New York, NY, *for Plaintiff-Appellant* Mohamed Qaseem Kakar.

LAYALIZA SOLOVEICHIK, Assistant United States Attorney (Varuni Nelson, Assistant United States Attorney, *on the brief*), *for* Breon S. Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Defendant-Appellee* United States Citizenship and Immigration Services.

LOHIER, *Circuit Judge*:

Over twenty years ago, an Immigration Judge (IJ) granted Mohamed Qaseem Kakar, an Afghan national, asylum in the United States. When Kakar later applied for lawful permanent residence, the United States Citizenship and Immigration Services (USCIS) denied his application because it found that he had engaged in terrorist activity that rendered him inadmissible. Kakar challenged USCIS's denial as arbitrary and capricious under the Administrative Procedure Act (APA), 5 U.S.C. § 701–706. On review, the United States District Court for the Eastern District of New York (Matsumoto, J.) affirmed the denial

2

under the "weapons bar" of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(3)(B)(iii)(V). The question on appeal is whether USCIS, in denying Kakar's application, adequately explained the unlawfulness of Kakar's acts under United States law, which is a necessary element of the weapons bar, and whether in doing so it considered his claim of duress. As we describe below, we are unable to discern USCIS's full reasoning for denying Kakar's application or to conclude that the agency considered all factors relevant to its decision, and we therefore conclude that its decision was arbitrary and capricious under the APA. We VACATE the judgment and REMAND the case to the District Court with instructions to remand to USCIS for further proceedings consistent with this opinion.

**BACKGROUND**

I

Kakar entered the United States from Afghanistan in 1999 and applied for asylum, withholding of removal, and withholding under the Convention Against Torture. To support his application, he alleged that the Taliban had persecuted him for disobeying its religious rules and for being a member of the Shi'a Muslim minority group in Afghanistan. He claimed that Taliban members

3

abducted him from his home, detained him at a Taliban base, and forced him to cook, clean, and wash their clothes. The Taliban once forced him to take a gun and fight against the opposition forces of Ahmad Shah Massoud, the leader of an armed group fighting the Taliban. After being held by the Taliban for roughly one month, Kakar escaped as soon as "[he] had an opportunity" and fled from Afghanistan to the United States. Certified Administrative Record ("CAR") 153, 158.

On March 28, 2000, an IJ granted Kakar asylum. On January 12, 2006, Kakar applied to adjust to lawful permanent resident status. See 8 U.S.C. § 1159. While Kakar's application was pending, in December 2007 Congress designated the Taliban as a terrorist organization. See Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, § 691(d), 121 Stat. 2365 (2007). Several years later, in 2013, USCIS sent Kakar a Notice of Intent to Deny, which stated that he was inadmissible for lawful permanent resident status because he had engaged in "terrorist activities" related to the Taliban. CAR 9–11. Following up in 2016, the agency issued a final decision denying Kakar's application for two reasons. First, USCIS determined that Kakar's use of a weapon on the Taliban's behalf as described above rendered him inadmissible under the "weapons bar," 8 U.S.C.

4

§ 1182(a)(3)(B)(iii)(V), because he used the weapon with "intent to endanger one or more individuals." CAR 2. USCIS acknowledged that Kakar had advanced a defense based on duress, but it said that the Secretaries of State and of Homeland Security had not created a duress exception to the weapons bar. Second, USCIS found that the services Kakar provided to the Taliban — cleaning, cooking, and washing clothes — constituted material support to a terrorist organization, rendering him inadmissible under the "material support bar," 8 U.S.C. § 1182(a)(3)(B)(iv)(VI). CAR 2.

Kakar appealed USCIS's decision to the District Court, raising several challenges under the APA. As most relevant here, he argued that USCIS's application of the weapons bar was arbitrary and capricious because the bar's precondition — that his acts must have been unlawful under Afghan or U.S. law — had not been met. USCIS countered that fighting for the Taliban as part of a campaign of religious oppression would have been unlawful under federal law. Even if the agency's decision that Kakar is inadmissible under the weapons bar was "not perfectly clear," the agency submitted, it must still be upheld under the APA's deferential review standard because the "facts found" by the agency bore a "rational connection" to the decision. Record on Appeal ("ROA") doc. 27 at 17

(quotation marks omitted) (citing <u>Karpova v. Snow</u>, 497 F.3d 262, 268 (2d Cir. 2007)).

Kakar and USCIS cross-moved for summary judgment. In resolving the motions in USCIS's favor, the District Court characterized Kakar's illegal conduct as "the use of a military-grade weapon to oppress a religious group, or to advance one religion in order to suppress another," and it concluded that USCIS "properly deemed [Kakar] inadmissible" because that conduct "would be manifestly unlawful under the laws of the United States." <u>Kakar v. U.S. Citizenship & Immigr. Servs.</u>, No. 16-cv-5032, 2020 WL 1545422, at *8 (E.D.N.Y. Mar. 31, 2020). Because it found that the weapons bar provided a sufficient basis for finding Kakar inadmissible, the District Court did not address the material support bar.

## DISCUSSION

### I

On appeal, Kakar contends that USCIS's application of the weapons bar was arbitrary and capricious and unsupported by substantial evidence, in violation of the APA. He further asserts that USCIS failed to consider at the time it denied his application whether his acts would have been illegal under United

6

States or Afghan law and offered only a post hoc rationalization of its decision, which the District Court accepted.

"This court reviews a district court's review of an agency action de novo." Nat. Res. Def. Council, Inc. v. Muszynski, 268 F.3d 91, 96 (2d Cir. 2001). Under the APA, our review is "narrow and deferential," Henley v. Food & Drug Admin., 77 F.3d 616, 620 (2d Cir. 1996); see also Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974), and "limited to examining the administrative record to determine whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," Muszynksi, 268 F.3d at 97 (cleaned up). Thus, "[u]nder the APA, we may set aside an agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Alzokari v. Pompeo, 973 F.3d 65, 70 (2d Cir. 2020) (quoting 5 U.S.C. § 706(2)(A)). "An agency action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not

be ascribed to a difference in view or the product of agency expertise." Id. (quotation marks omitted).

In reviewing the agency's decision, we "remain bound by traditional administrative law principles, including the rule that judges generally must assess the lawfulness of an agency's action in light of the explanations the agency offered for it rather than any ex post rationales a court can devise." Garland v. Ming Dai, 141 S. Ct. 1669, 1679 (2021) (citing SEC v. Chenery Corp., 318 U.S. 80 (1943)). Thus, a court "may not itself supply a reasoned basis for the agency's action that the agency itself has not given." Brodsky v. U.S. Nuclear Regul. Comm'n, 704 F.3d 113, 119 (2d Cir. 2013) (quotation marks omitted). This reflects the "settled proposition[]" that "in reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." Dep't of Com. v. New York, 139 S. Ct. 2551, 2573 (2019). Further, in justifying its decision the agency need not "provide written findings about every piece of evidence that it consider[s]." Dibble v. Fenimore, 545 F.3d 208, 219 (2d Cir. 2008) (quotation marks omitted). A court can thus "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Id. (quotation marks omitted).

II

USCIS determined that Kakar was ineligible to be admitted into the United States in part because, it found, he had engaged in "terrorist activity" as that term is defined in 8 U.S.C. § 1182(a)(3)(B)(iii), which includes the weapons bar. USCIS's finding that Kakar is inadmissible under the weapons bar was arbitrary and capricious because the agency failed to "consider an important aspect" of the issue, Alzokari, 973 F.3d at 70, namely, whether Kakar's actions would have been unlawful under the laws of Afghanistan or the United States.

As directly relevant to this appeal, the INA defines "terrorist activity" as:

[A]ny activity which is unlawful under the laws of the place where it is committed (or which, if it had been committed in the United States, would be unlawful under the laws of the United States or any State) and which involves . . . the use of any . . . firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals . . . .

8 U.S.C. § 1182(a)(3)(B)(iii)(V).

In determining that Kakar was ineligible because he had engaged in terrorist activity, USCIS relied on the fact that Kakar had used a weapon on behalf of the Taliban. But that finding is not enough; at best, it solves only a small part of the equation. The INA requires that the agency also find that Kakar's offending act either was unlawful where it took place (Afghanistan) or

would be unlawful in the United States before it can determine that he is inadmissible under the weapons bar.[1]  Id. § 1182(a)(3)(B)(iii).  Such a finding is by definition an "important aspect of the problem" that the agency had to resolve.  Alzokari, 973 F.3d at 70.  But USCIS failed to make this finding.

We recognize that the District Court determined that the unlawfulness requirement was satisfied.  In concluding that "under the Weapons Bar, Mr. Kakar was properly deemed inadmissible," the court explained that "the use of a military-grade weapon to oppress a religious group, or to advance one religion in order to suppress another, would be manifestly unlawful under the laws of the United States."  Kakar, 2020 WL 1545422, at *8.  But USCIS first conveyed this justification in the lawsuit before the District Court, and now to us on appeal, well after it issued its decision.  USCIS Br. at 23, 26–27.  Without expressing a view on the merits of that justification, we cannot "accept [USCIS's] post hoc rationalizations for agency action" that are not reasonably discernible from its initial decision justifying the action.  Pub. Citizen, Inc. v. Mineta, 340 F.3d 39, 61 (2d Cir. 2003) (quotation marks omitted); see Brodsky, 704 F.3d at 119.

---

[1] "[T]he IJ need not even consider the laws of the affected country if the activity would be unlawful in the United States."  Zumel v. Lynch, 803 F.3d 463, 472 (9th Cir. 2015).  In the absence of record evidence concerning Afghan law in this case, the parties focus on whether Kakar's act would violate the laws of the United States.

USCIS was required to articulate a "contemporaneous explanation[]" for its decision — in other words, an explanation at the time it issued its decision. Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 140 S. Ct. 1891, 1909 (2020). In a lawsuit brought under the APA, it was not appropriate for the District Court to try to salvage USCIS's failure to do so by supplying an explanation or accepting one that the agency formulated while litigating this lawsuit. See Brodsky, 704 F.3d at 119.

USCIS suggests that we should overlook its failure because the unlawfulness of Kakar's conduct under the laws of the United States is clear and obvious. See Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The rare case may arise in which we excuse the agency's failure to make an explicit finding as to each element required to find a petitioner inadmissible — for example, if USCIS merely failed to incant the unlawfulness of an incontestable act of premeditated murder where no affirmative defenses are raised. But this is not one of those rare cases. To the contrary, whether Kakar's conduct would have been "unlawful under the laws of the United States" is subject to genuine and reasonable dispute. 8 U.S.C. § 1182(a)(3)(B)(iii).

11

To start, Kakar's conduct can be understood in at least two different ways. On the one hand, Kakar claimed before USCIS and continues to press on appeal that he bore "arms . . . []on behalf of a duly constituted government within its national borders," potentially in self-defense against an attack by an armed group, led by Ahmad Shah Massoud, with which the Taliban was in armed conflict. ROA doc. 1 at 4–5. On the other hand, USCIS claims that Kakar participated in the Taliban's acts of "militarily impressing young men because they are the 'wrong' faith, . . . persecut[ing] them for their religious beliefs, and also forcing them to fight under the banner of faith, to establish and promote the interests of that faith." USCIS Br. at 26–27.

But no matter how one conceives of Kakar's conduct, USCIS has never addressed Kakar's affirmative defense of duress, which, we have explained, "'negates a conclusion of guilt' based on a defendant's otherwise culpable conduct." United States v. Zayac, 765 F.3d 112, 123 (2d Cir. 2014) (quoting Dixon v. United States, 548 U.S. 1, 7 (2006)). To be sure, in considering Kakar's petition, USCIS noted Kakar's claim that he was "forced . . . to take a gun and fight" against adherents of his religious faith. CAR 7–8. The agency also acknowledged that "there is no existing exercise of the Secretary's discretionary

12

exemption authority under INA section 212(d)(3)(B)(i) that applies to the use of a weapon under duress."[2] CAR 8. But it ultimately concluded that Kakar "used a weapon with intent to endanger one or more individuals," CAR 6, without further considering whether Kakar's duress defense, if credited, might "negate[]" not only "a conclusion of guilt" but also the unlawfulness of the underlying conduct if it had occurred in the United States. Zayac, 765 F.3d at 123 (quotation marks omitted); see Dixon, 548 U.S. at 7. This is not an illusory debate with a clear or definitive answer, and a question remains whether the weapons bar includes an exception for noncitizens who use a weapon under duress.

We need not resolve here whether duress is a defense to the unlawfulness element of the weapons bar in order to decide Kakar's challenge under the APA. It is enough that the question of unlawfulness does not present "the type of self-explanatory, unremarkable application of governing law that would allow a reviewing court to exercise its limited authority to uphold an agency's action

---

[2] The fact that the Secretary has not created a duress exception to the weapons bar under 8 U.S.C. § 1182(d)(3)(B)(i) does not necessarily indicate that none exists. The text of the weapons bar — which not only includes an explicit intent requirement, see 8 U.S.C. § 1182(a)(3)(B)(iii)(V), but requires that the act be unlawful, see id. § 1182(a)(3)(B)(iii) — could be read to provide an implied duress defense. This text distinguishes the weapons bar from the material support bar, for which the Secretary has created a duress waiver, and which has been found not to include an implied duress defense. See Matter of M-H-Z-, 26 I. & N. Dec. 757, 762–64 (BIA 2016).

based on justifications that the court discerns for itself." Yale-New Haven Hosp. v. Leavitt, 470 F.3d 71, 86 (2d Cir. 2006). The record suggests that Kakar has at least a colorable duress defense, which may (or may not) negate the unlawfulness element. But the record fails to tell us how, or even whether, USCIS considered his duress defense. It is possible that USCIS determined the defense did not apply in this case because it found that Kakar "used a weapon with intent to endanger one or more individuals." CAR 6. Or USCIS may have concluded that the defense of duress is irrelevant in general to assessing whether the unlawfulness element is satisfied. Or it may be that USCIS, whose decision in this case does not mention the unlawfulness element, overlooked it altogether.

As we have explained, we "must be certain that an agency has considered all the important aspects of the issue and articulated a satisfactory explanation for its action." Henley, 77 F.3d at 620 (quotation marks omitted). Altogether, the record in this case leaves us far from certain that USCIS considered Kakar's duress defense or adequately considered whether his conduct satisfied the unlawfulness element of § 1182(a)(3)(B)(iii). And "when an administrative record is insufficient to permit [us] to discern an agency's reasoning or to

conclude that the agency has considered all relevant factors," remand is appropriate.  Brodsky, 704 F.3d at 119.

We therefore vacate the judgment and remand the cause to the District Court with instructions to remand to USCIS to consider and more clearly explain whether, in light of Kakar's duress defense, his conduct was unlawful under the laws of the United States and thus qualifies as "terrorist activity" within the meaning of § 1182(a)(3)(B)(iii).  Because we conclude that USCIS's decision was arbitrary and capricious, we express no view on Kakar's contention that the decision was "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E) — a standard that is "more searching" than the "arbitrary and capricious" standard. United States v. Int'l Bhd. of Teamsters, 964 F.2d 1308, 1311–12 (2d Cir. 1992). Nor do we consider the agency's separate finding of inadmissibility based on the material support bar, the applicability of that bar in view of the Taliban's designation as a terrorist organization only after Kakar's actions, or whether the IJ's prior grant of asylum precluded USCIS from finding Kakar inadmissible

based on collateral estoppel or <u>res judicata</u>. Both parties are free on remand to present arguments on these issues.[3]

## CONCLUSION

For the foregoing reasons, we VACATE the judgment and REMAND the cause to the District Court with instructions to remand to USCIS for further proceedings consistent with this opinion.

---

[3] At oral argument, counsel for USCIS expressed that, although she was not certain, she believed that Kakar could raise a <u>res judicata</u> argument before the agency on remand. <u>See</u> Tr. of Oral Arg. at 16:1–4.